NAME:

**Allen** Morsley , Reg No.#14718-056

ADDRESS:

P.O. Box 1000
Lewisburg , Pa. 17837
U.S.P.

or PLACE OF CONFINEMENT & PRISON NUMBER

*Note:* *If represented by an attorney, his name, address &*
*telephone number*

*Note:* *It is your responsibility to notify the Clerk of the*
*Court, in writing of any change of address*

**FILED
SCRANTON**

JUN - 6 2001

PER *Rkm*

DEPUTY CLERK

## *United States District Court*

John Doe ,a/k/a Baldhead,Ra-leek,Alan
Morseley.

FULL NAME: (Include name under which you were convicted)

*Petitioner,*

vs.

Donald Romine

NAME OF WARDEN(or other authorized person having custody
of petitioner)

*Respondent.*

# 1: CV 01-1003

CASE NO:_____

(To be supplied by the clerk of
the United States District Court)

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN FEDERAL CUSTODY
28 U.S.C. § 2241

## INSTRUCTIONS - READ CAREFULLY

This petition shall be legibly handwritten or typewritten,
signed by the petitioner, under penalty of perjury. You must set
forth *CONCISELY* the answer to each question in the proper
space on the form. Any false statement of a material fact may
serve as the basis for prosecution and conviction for perjury.

You must not attach separate pages to this except that
*ONE* separate additional page is permitted in answering Question
No. 9.

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

Upon receipt of a fee of $5.00, you petition will be filed if it is in proper order.

If you are seeking leave to proceed in forma pauperis (without paying the $5.00 fee and other court costs), then you must also execute the declaration on the last page, setting forth information which establishes your inability to pay the fees and cost of the proceedings or to give security therefor. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution. If you prison account exceed $25.00, you must pay the filing fee as required by the rule of the district cour .

When the petition is completed, the *original and two copies* must be mailed to the Clerk of the United States District Court for the

Only one sentence, conviction or parole matter may be challenged in a single petition. If you challenge more than one, you must do so by separate petitions.

Petitions which do not conform to these instruction will be returned with a notation as to the deficiency.

PLEASE COMPLETE THE FOLLOWING: (check appropriate number)

This petition concerns:

1. ☒ a conviction
2. ☒ a sentence
3. ☐ jail or prison conditions
4. ☐ prison discipline
5. ☐ a parole problem
6. ☐ other

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

# PETITION

1.  Place of confinement _____ U.S.P Penitentiary , P.O. Box 1000 , Lewisburg , Pa.17837

2.  Name and location of court which imposed sentence _U.S. District Court for the Eastern_
    _District of North Carolina_

3.  The indictment number or numbers (if known) upon which, and the offense or offenses for which,
    sentence was imposed:
    (a) ___93-102-07-CR-5-F_____
    (b) _____
    (c) _____

4.  The date upon which sentence was imposed and the terms of the sentence:
    (a) _March 8, 1994_____
    (b) _____
    (c) _____

5.  Check whether a finding of guilt was made:
    (a)    ☐ After a plea of guilty
    (b)    ☒ After a plea of not guilty
    (c)    ☐ After a plea of nolo contendere

6.  If you were found guilty after a plea of not guilty, check whether that finding was made by:
    (a)    ☒ a jury
    (b)    ☐ a judge without jury

7.  Did you appeal from the judgment of conviction or the imposition of sentence?
           ☒ Yes      ☐ No·

8.  If you did appeal, give the following information for each appeal:
    (a)(1)  Name of Court ____U.S. Court of Appeals for the Forth Circuit._
        (2)  Result _____Affirmed_____
        (3)  Date of Result ____August 8, 1995_____
        (4)  Citation or number of opinion __Unknown_____

---

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

(5)  Grounds Raised *(list each)*   Trial court made erroneous evidentitary ruling

(A) _____

(B) _____

(C) _____

(D) _____

(b)(1)  Name of Court _____   N/A

(2)  Result _____   N/A

(3)  Date of result _____   N/A

(4)  Citation or number opinion _____   N/A

(5)  Grounds raised (list each)   N/A

(A) _____   N/A

(B) _____   N/A

(C) _____   N/A

(D) _____   N/A

CAUTION:  If you are attacking a sentence imposed under a federal judgment, you must first file a direct appeal or motion under 28 U.S.C. § 2255 in the federal court which entered judgment.

9.     State *CONCISELY* every ground on which you claim that you are being held unlawfully.  Summarize *briefly* the *facts* supporting each ground.  If necessary, attach a SINGLE page only behind this page.

CAUTION:  If you fail to set forth all grounds in this petition, you may be barred from presenting additional ground at a later date.

(a)     Ground One     In Light of the Supreme Court's recent decision in Apprendi and Jones , the petitioners sentence cannot exceed the statutory maximum for the offenses , which carried the most lenient statutory prescribed sentence

Supporting *FACTS* (tell your story *BRIEFLY* without citing cases or law).

CAUTION:  You must state *facts not conclusions* in support of your grounds.  A rule of thumb to follow is - who did exactly what to violate your rights at what time or place.

Petitioner argues that because the activity alleged in count One (1) of the indictment involved a [variety] of offenses , and the jury rendered a simple general verdict , without stating which offenses the petitioner was guilty ,then his sentence of Life , exceeded the statutory maximum, that could be imposed.

_____

_____

---

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

(b)    Ground Two _____ [See Attached supplemental pages

Supporting *FACTS* (Tell your story *BRIEFLY* without citing cases or law).
[see Attached supplemental pages]

(c)    Ground Three __ [See Attached supplemental pages]

Supporting *FACTS* (Tell your story *BRIEFLY* without citing cases or law).
[See Attached supplemental pages]

(d)    Ground Four _____

Supporting *FACTS* (Tell your story *BRIEFLY* without citing cases or law).

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

[ ATTACHED SUPPLEMENTAL PAGE 5-of-9 ]

**Ground Two:**        THE COURT WAS WITHOUT SUBJECT MATTER JURISDICTION TO
                       ENTERTAIN THE INDICTMENT AGAINST PETITIONER, WHERE
                       THE AUSA , UNCONSTITUTIONAL AMENDED THE INDICTMENT.

Following a wiretap investigation of drugs and weapons dealing , this case
was presented to a grand jury. The targets of the investigation were identified
and indicted. Evidence was presented that the name of a unknown person was heard
over the wiretap. No evidence was presented identifying the name and therefore ,
when the content of the intercepted conversation was presented , the person was
designated as "John Doe."  During the course of the excution of a warrant on
September 23rd 1993 , petitioner was arrested and a theory was developed by the
arresting officers , that petitioner was "John Doe." The case was never
re-represented to the grand jury for a Superseding Indictment in order for the
grand jury to rule of indict petitioner as "John Doe," the grand had to be made aware
of petitioners existence.

The Rub was that the grand jury indicted one defendant as "John Doe." There
was not scintilla of evidence before the grand jury , that petitioner was the one
intended to be John Doe. And petitioner further acerts the A.U.S Attorney Mrs.
Christine B. Hamilton , Amended the Indictment when she put petitioners identity
beside :John Doe." Infact during petitioners Trial , the A.U.S. Attorney , Hamilton
stated that she asked Agents Fannely and Moss to bring government witness (Fletcher
Johnson) , who never testified before the grand jury concerning petitioners, Name
, Height , Weight , or even Race , to the Raleigh Police Department on 9/23/93,
to make sure that they had the right person ,  even after the grand jury had handed
down the indictment almost three Months earlier, 7/6/93.

Yet at trial , the A.U.S. Attorney Hamilton , guaranteed that Agents Fannely
and Moss knew who they had arrested. yet in open court , under Oath , both Agents

[ ATTACHED SUPPLEMENTAL PAGE 5-of-9-2 ]

Fannely and Moss testified that they had [no] personal knowledge who "John Doe," or a/k/a baldhead , a/k/a Roy lee , a/k/a Raleighs identity was , stating clearly to the Magistrate Judge Alexander B. Denson , as well as the trial Judge James C. Fox , that they were acting off a tip from a informant who they never used before , when they were excuting a "John Doe" warrant on 9/23/93 were petitioner was arrested and detained to stand trial. While addressing petitioners objections to the Amendment of the Indictment , the trial Judge James C.Fox . overrule petitioners objections stating : "That the grand jury indicted somebody and it was a question for the petit jury to decide who that person was."

Most importantly , when the jury was being charged in the courts instructions , the court instructed them [without] petitioner being charged and indicted as "John Doe" but instead the court used ,(Allen Morsley , a/k/a Baldhead , a/k/a Ra Leek.)(See Attached pages of the courts instructions at 1211,1212,1213. Also see the verdict sheet where the name Allen Morsley was also used ,Exhibt A-4).

Petitioner contends that the A.U.S. Attorney and the court [unconstitutional] Amended the indictment in violation of his Sixth Amendment Right.

0.  Have you ever filed previous petitions for habeas corpus, motions under Section 2255 of Title 28, United States Code, or any other applications, petitions or motions with respect to this conviction?
☒ Yes .      ☐ No

1.  If your answer to Question No. 10 was yes, give the following information:

(a)(1) Name of Court_____U.S. District Court for the Eastern District of North Caroli

(2) Nature of proceedings ___28 USC § 2255 Motion_____

(3) Grounds raised _____

_____

_____

(4) Result _____Denied_____

(5) Date of Result _____August 4, 1998_____

(6) Citation or numbers of any written opinions or orders entered pursuant to each disposition.
No. 97-7813 (unpublished per curiam opinion)

(b)(1) Name of Court_____N/A_____

(2) Nature of proceedings ___N/A_____

(3) Grounds raised _____N/A_____

_____

_____

(4) Result _____N/A_____

(5) Date of Result _____N/A_____

(6) Citation or numbers of any written opinions or orders entered pursuant to each disposition.

N/A

12. If you did not file a motion under Section 2255 of Title 28, United States Code, or if you filed such a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention.
The petitioner cannot meet the gatekeeping provision for filing a successive

Petition in order to avail himself of the recent Supreme Court ruling in Apprendi

New Jersey , 147 L.ED 2d 435 (2000).

_____

_____

_____

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

13.   Are you presently represented by counsel? ☐ Yes      ☒ No

If so, name, address and telephone number _____

Case name and court _____

14.   If you are seeking leave to proceed in *forma pauperis*, have you completed the declaration setting forth the required information?

☐ Yes          ☒ No,

WHEREFORE, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _May 28, 2001_____
                                    *(date)*

_Alan Mossley_____
*Signature of Petitioner*

---

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN MORSLEY  ,<br>          PETITIONER | * | Dt.No._____ |
| | * | (By Clerk) |
| | * | |
| | * | |
|           v. | * | |
| | * | |
| | * | |
| DONALD ROMINE (WARDEN)  , | * | |
|           RESPONDENT. | * | |
| ------------------------------- | * | ------------------------------- |

WRIT OF HEABEAS CORPUS PURSUANT TO TITLE
28 U.S.C SECTION § 2241(c)(3) , WITH
INCORPORATED MEMORANDUM OF LAW.

Now comes , the petitioner , Allen Morsley , pro se , and pursuant to Title

28 U.S.C. §2241 , and respectfully moves this Honorable Court to Issue a **Writ** ,

based upon the ground that pursuant to the Recent Supreme Court's decision in both ,

Apprend v. New Jersey , and Jones v. United States , his sentences impose under the

Indictment [exceed] the Statutory Maximum for the offenses , are constitutionally

infirm. In support thereof , petitioner asserts the following.

JURISDICTION

This Court has Jurisdiction to entertain petitioners 28 U.S.C. §2241 Motion.

Jurisdiction is invoke in Harris v. United States , No. Civ.A. 00-5194 , 2000WL

1641073 (D.N.J. Nov 1 , 2000) , where the Hon.Judge Irenas , held that an Apprendi ,

supra , based claim is [one] of the few instance where Dorsainvill , operates to

"permit a § 2241 challenge to the Lawfulness of A Federal Sentence where relief

under § 2255 is foreclosed." See In Re Vial v. United States , 115 F.3d  1192

(4th cir 1997) , stating; New Rule of Constitutional Law would [not] be available until Supreme Court declared applicability of that Rule to collateral proceedings. Thus , since petitioner is Actually Innocent of the sentence imposed , and he can not meet the gatekeeping provision for filing a successive petition in order to avail himself of the recent Supreme Court ruling in Apprendi , petitioner moves under § 2241. See Harris , supra.

## PROCEDURAL HISTORY

Petitioner was indicted in Federal Court by a grand Jury in the Eastern District of North Carolina on July 6 , 1993. On November 22 , 1993 , petitioner entered a plea of [not guilty]. The indictment charged petitioner with a Ninety Eight count indictment. petitioner was only charged with Eight counts.  The indictment charged petitioner under Count One (1) , with a variety of offenses. After trial petitioner was found guilty on Eight (8) counts on December 3 , 1993. Sentencing was on March 8 , 1994. The Hon. Judge James C. fox , sentenced petitioner to a Life sentence under count One and Five (5) Years consecutive and Six (6) Months alos consecutive. The Six Month sentence was for the contempt of court.

The court adopted the PSI Report and  set the amount of the quantity of a detectable amount of a mixture of a substance containing Cocaine Base; and Cocaine , at a amount [not] specified in the Indictment return by the grand jury. Petitioner Filed his Notice of appeal , in the Fourth Circuit Appeal Court , and on August 31 , 1995 , the Fourt Circuit Appeals Court denied petitioner Appeal. Thereafter , petitioner filed a Motion under 28 U.S.C. § 2255 , which Motion was also denied in the Eastern District of North Carolina. The District as well as the Fourth Circuit also denied petitioners certificate of Appealability , to Appeal his §2255

Motion. This Motion now follows.

STANDARD OF REVIEW

Petitioner is a layman of law and therefore , his Motion should be construed Liberally , or held to less stringent standards than formal pleadings drafted by a lawyer.See <u>Haines v. Kerner</u> , 404 U.S. 519 (1972).

**Ground One:**    **IN LIGHT OF THE SUPREME COURT'S RECENT DECISION IN APPREND V. NEW JERSEY , AND JONES V. U.S. , THE PETITIONERS SENTENCE [CANNOT] EXCEED THE STATUTORY MAXIMUM FOR THE OFFENSES , WHICH CARRIED THE MOST LENIENT STATUTORY PRESCRIBED SENTENCE.**

Count One 91) of the Indictment charged petitioner and others , with Title 21 U.S.C. Sections 846 and 841(a)(1). The Indictment never staed a specific quantity of drugs charged to petitioner.

The PSI Report recommended that petitioner be held accountable for Nine (9) Ounces of Cocaine Base , and Five (5) Ounces of Cocaine. (See Attached page 11 , of the PSI). The PSI Report also stated; "inasmuch as the **drugs/firearams conspiracy was intertwine.**

The court's jury instruction did not state a amount of drugs for the jury to determine that petitioner be held accountable for. (See Jury Instructions , pages 1217,1218,1219,1220: Attached). However , the court adopted the PSI Report and findings , and sentence petitioner on both , controlled substances ,(9) Ounces of Cocaine Base , and (5) Ounces of Cocaine , thereby imposed a Life sentence.

The petitioner states that  the jury never found beyond a reasonable doubt that petitioner possessed any specific quantity of drugs , because the Indictment never alleged those elements.

The petitioner also contends , that because the activity alleged in count one (1) of the indictment involoved "two" different controlled substance , and the jury rendered a simple general verdict , without stating which offenses the petitioner was guilty , then his sentence of [Life] , "exceeded" the statutory maximum that could be imposed.See Apprendi v. New Jersey , 530 U.S. ___ ; 120 S.Ct 2348 ; 147 L.ED 2d 435 (2000); and Jones v. U.S. , 143 L.Ed 2d 311 (1999) , to wit;

> "Unde the due process clause of the Fifth Amendment and notice and jury guarantess of the Sixth Amendment , any facts (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment , submitted to a jury , and proven beyond a reasonable doubt. id Jones , at n.6 (emphasis added).

Also See Edwards v. United States , 140 L.Ed 703 (1998). The court in Edwards , held , a conspiracy to possess different controlled substances is alleged in a single count of an indictment , the applicable mandatory minimum sentence depends on which controlled substance the petitioner was guilty of conspiring to possess , a general verdict of guilty only [authorizes] the lowest mandatory minimum. Also See U.S. v. Barret , 870 F.2d 953 (3rd cir 1989).

Since petitioners indictment does not specify the amount of drugs allegedly involved, he must be sentenced to a punishment within the lowest statutory range.See Apprendi , supra. Wherefore , petitioner is "Actually Innocent" of the sentence imposed , his sentence thereunder must be vacated.

GROUND TWO:    THE COURT WAS WITHOUT SUBJECT MATTER JURISDICTION TO ENTERTAIN THE INDICTMENT AGAINST PETITIONER , WHERE THE AUSA , UNCONSTITUTIONAL AMENDED THE INDICTMENT

Following a Wiretap investigation of drugs and weapons dealing , this case was presented to the grand jury. The targets of the investigation were identified and indicted. A phone conversation was present , that the name of an unknown person was heard over the wiretap. No evidence was presented identifying the name and there for , when the contents of the intercepted conversation was presented , the person

was designated as "John Doe."  During the course of the excution of a warrant on September 23rd 1993 , petitioner was arrested and a theory was developed by the arresting officers , that petitioner was "John Doe."  The case was never re-represented to the grand jury for a superseding indictment in order for the grand jury to rule or indict petitioner as "John Doe," the grand jury had to be made aware of petitioners identity.

The rub was that the grand jury indicted one defendant as "John Doe." There was not scintilla of evidence before the grand jury , that petitioner was the one intended to be "John Doe." And petitioner further contends that the A.U.S. Attorney (Mrs. Hamilton) , amended the indictment when she put petitioner name (Allen Morsley) beside "John Doe." In fact during petitioners trial , the A.U.S. Attorney (Mrs. Hamilton) stated that she asked Agents Fannely and Moss to bring the government witness (Flectcher Johnson) , who never testified before the grand jury concerning petitioners , Name,Height, Weight or even Race , to the Raleigh Police Department on 9/23/93 , to make sure that they had the right person , even after the grand jury had handed down the indictment almost three Months earlier, 7/6/93.(Also see September 27,1993 , Transcripts of Detention Hearing pages 1-16).

Yet at trial , the A.U.S. Attorney Mrs.Hamilton , guaranteed that Agent Fannely and Moss knew who they had arrested. But in open court , under Oath , both Agents Fannely and Moss testified that they had [no] personal knowledge who "John Doe," or a/k/a  Baldhead , a/k/a  Roy Lee , a/k/a Raleighs identity was , stating clearly to the Magistrate Judge Alexander B.Denson , as well as the trial Judge Mr. Fox , that they were acting off a tip from a informant who they never used before , when they were excuting a warrant on 9/23/93 , for petitioners arrest and detain to stand trial. It is evident that this informant was [unreliable] , because they never used him before , nor did they show his testimony was credible.    While addressing

petitioners objections to the government and court to Amend the indictment , the trial judge , overrule petitioners objections stating; **"that the grand jury indicted somebody and , it was a question for the petit jury to decide who that person was."** ( See Exhibits A-1.A-2,A-3).   It is quite evident that the grand jury never knew "John  Doe" , a/k/a Baldhead , a/k/a Ra-Leek , identity.

Most importantly , when the jury was being charged in the court's instructions , the court instructed them [without] petitioner being charged as "John Doe" as the indictment stated from the grand jury , but instead the court amended the inditment in used the name; Allen Morsley , a/k/a Baldhead  , a/k/a Ra-Leek. ( See Attached pages of the court instructions at 1211,1212,1213).

Petitioner contends that the AUSA Attorney and the court unconstitutional Amendment the indictment in violation of his Sixth Amendment Right.

## THE LAW

Jurisdiction defects , by contrast cannot be procedurally defaulted. As Federal Courts are courts of limited Jurisdiction , deriving powers solely from Acticle III of the constitution and from the Legislative Acts of Congress. See Insurance Corp.Of IR , Itd  v. Compagnieded Bauxites De Guinee , 456 U.S. 694 (1982).

Furthermore courts are bound to assure themselves of Jurisdiction even if the parties fail to raise the issue. See Insurance Corp.IR, Itd , 456 U.S. 702 , "A court not only has the power but also the obligation at anytime to inquire into Jurisdiction whenever the possibility that jurisdiction does not exist arises , citing Philbrook  v. Glodgett , 421 U.S. 707 (1975); and United States v. Foley , 73 F.3d 484 (2nd cir 1996).

Petitioner contends , that since his Indictment was not resubmitted to the Grand Jury in order for them to know his indentity , the court cannot create its own jurisdiction. To make such a ruling violated petitioners Fifth Amendment Constitutional Right. See Russell v. United States , 369 U.S. 749 (1962). "An indictment may not be amended except by resubmitted to the grand jury , unless the change is merely of form." If it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury , and the prisoner can be called upon to answer to the indictment as thus charged , the restriction which the constitution placed upon the power of the court , in regard to the prerequisite of an indictment , in reality , no longer exists.id.

Petitioner could not be convicted under an indictment against an individual named "John Doe," where petitioner's name did not appear in the indictment , and there was a reasonable doubt as to whether the  petitioner was "John Doe."

In a similar case , United States v. Jay , 713 F.Supp 377 (N.D.Ala 1988) , the indictment charged,"Jay" (being a black male approximately 20 to 30  Years of age , whose indentity is otherwise unknown to the grand jury). Gerald Wayne Daniel was  brought to trial and convicted. In setting aside the conviction and dismissing the indictment , the court wrote:

> "Frankly , this court , including its magistrates , were asleep at the
> switch when they allowed this case to proceed to trial against Gerald
> Wayne Daniel when he never was named in the indictment."

Herein this case , it was the grand jury , [not the court] , to decide whether petititioner was the "John Doe" named in the indictment. Without such grand jury presentment , the court was without subject matter jurisdiction to amend or try the indictment. All the government had to do was to present the issue of identification to the grand jury , for a superseding indictment. To allow such shorthand proceeding would be to authorize the grand jury to issue a series of "John Doe" indictments

to the government , to be used to prosecute [whomever].

## CONCLUSION

Wherefore , the judgment of convictions should be Vacated and the Indictment dismissed and a full hearing ordered on the Issues herein presented.

May 28, 2007

Respectfully Submitted ,

Allen Morsley #14718-056
P.O. Box 1000
Lewisburg , Pa. 17837

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

FILED

JUL 6 '93

DAVID W. DANIEL, CLE
U.S. DISTRICT COUR
E. DIST. NO. CAR.

NO. 93-102-01-CR-5-F
NO. 93-102-02-CR-5-F
NO. 93-102-03-CR-5-F
NO. 93-102-04-CR-5-F
NO. 93-102-05-CR-5-F
NO. 93-102-06-CR-5-F
NO. 93-102-07-CR-5-F
NO. 93-102-08-CR-5-F
NO. 93-102-09-CR-5-F

UNITED STATES OF AMERICA                    :

v.                                          :        I N D I C T M E N T

CLYDE ANDRE HENDRICKS                       :
MELVIN ADAMS                                :
ANTHONY B. HOLLEY                           :
STANLEY LEACH                               :
LENTON EARL JORDAN                          :
FLETCHER JOHNSON                            :
JOHN DOE,                                   :
   a/k/a Raleek,                            :
   a/k/a Baldhead                           :
TUVAL MCKOY                                 :
LORI ANNE PERRY HENDRICKS                   :

The Grand Jury charges that:

COUNT 1

Beginning in or about January 1992, the exact date being
unknown, and continuing up to and including June 17, 1993, within
the Eastern District of North Carolina and elsewhere, CLYDE ANDRE
HENDRICKS, MELVIN ADAMS, ANTHONY B. HOLLEY, STANLEY LEACH, LENTON
EARL JORDAN, FLETCHER JOHNSON, JOHN DOE, a/k/a Raleek, a/k/a
Baldhead, TUVAL MCKOY and LORI ANNE PERRY HENDRICKS, the defendants
herein, did unlawfully, knowingly and intentionally combine,
conspire, confederate and agree together with others known and

unknown to the grand jury, to commit the following offenses against the United States:

1.  To knowingly, intentionally and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2.  To knowingly, intentionally and unlawfully distribute a quantity and mixture of a substance containing a detectable amount of cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.  To knowingly, intentionally and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4.  To knowingly, intentionally and unlawfully distribute a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

### WAYS, MANNER AND MEANS TO ACCOMPLISH THE CONSPIRACY

The primary purpose of the conspiracy was to make as much money as possible through the distribution of cocaine, cocaine base and firearms, in the Eastern District of North Carolina. In order to accomplish the goals of the conspiracy the co-conspirators did commit and aid and abet in the commission of the following violations:

is applied. In this instance, the applicable guideline for Count 1 is 2D1.1, the applicable guideline for Counts 18, 37, and 44 is 2F1.1, and the applicable guideline for Counts 80, 81, and 95 is 2K2.1. 2D1.1 results in the highest offense level and as a result, will be utilized for purposes of guideline calculations.

Counts 1, 18, 37, 44, 80, 81, and 95:

28.   **Base Offense Level:** The United States Sentencing Commission Guideline for          <u>34</u>
violation of 21 USC § 846 is found in 2D1.1. Investigation revealed the
defendant was responsible for the sale of 5 ounces of cocaine and 9 ounces of
cocaine base. Conversion of these substances to their marijuana equivalency
results in a total quantity of controlled substances of 5,135.35 kilograms of
marijuana, which provides a base offense level of 34.

29.   **Specific Offense Characteristics:** Although firearms were used in conjunction          <u>0</u>
with the instant offense, the defendant has been convicted of Using a Firearm
During a Drug Trafficking Offense, which requires a 5 year consecutive sentence
to any other sentence imposed by the Court. Pursuant to 2K2.4, Application
Note 2, where a sentence under this section is imposed in conjunction with a
sentence for an underlying offense, any specific characteristic for possession of
a firearm is not to be applied in respect to the guideline for the underlying
offense. Therefore, no enhancement is warranted.

30.   **Victim-Related Adjustments:** None.          <u>0</u>

31.   **Adjustments for Role in the Offense:** None.          <u>0</u>

32.   **Adjustment for Obstruction of Justice:** During court proceedings the defendant          <u>+2</u>
provided his name as Allen Morsley to the court. Investigation uncovered his
true name to be Allen Mosley. Overall, the information he has provided has been
incomplete and misleading which resulted in significant hinderance to the
investigative process. Pursuant to 3C1.1, 2 levels are added.

33.   **Adjusted Offense Level (Subtotal):**          <u>36</u>

34.   **Chapter Four Enhancements:** As is shown in Part B (Criminal History), the          <u>37</u>
defendant has been convicted of two violent felony offenses. Since the instant
offense involves a controlled substance and the defendant was 18 years or older
at the time of its commission, the defendant is a career offender within the
meaning of 4B1.1 of the guidelines. The offense level determined under 4B1.1
is 37 rather than the lower level calculated above.

1217

1        AS TO EACH COUNT, BEFORE A DEFENDANT MAY BE FOUND

2  GUILTY OF A CRIME, THE GOVERNMENT MUST ESTABLISH BEYOND A

3  REASONABLE DOUBT THAT UNDER THE STATUTES DESCRIBED IN THESE

4  INSTRUCTIONS, THAT DEFENDANT WAS FORBIDDEN TO DO THE ACT

5  CHARGED IN THE INDICTMENT, AND THAT HE INTENTIONALLY COMMITTED

6  THE ACT.

7        AS STATED BEFORE, THE LAW NEVER IMPOSES UPON A

8  DEFENDANT IN A CRIMINAL CASE THE BURDEN OR DUTY OF CALLING ANY

9  WITNESSES OR PRODUCING ANY EVIDENCE.

10       YOU WILL NOTE THE INDICTMENT CHARGES IN EACH COUNT

11  THAT THE OFFENSE WAS COMMITTED "ON OR ABOUT" OR "IN OR ABOUT"

12  A CERTAIN DATE.  THE PROOF NEED NOT ESTABLISH WITH CERTAINTY

13  THE EXACT DATE OF THE ALLEGED OFFENSE.  IT IS SUFFICIENT IF

14  THE EVIDENCE IN THE CASE ESTABLISHES BEYOND A REASONABLE DOUBT

15  THAT THE OFFENSE WAS COMMITTED ON A DATE REASONABLY NEAR THE

16  DATE ALLEGED.

17       THE INDICTMENT CHARGES EACH OF THE DEFENDANTS WITH

18  CONSPIRACY TO VIOLATE TITLE 21 UNITED STATES CODE SECTION

19  841(A)(1) BY POSSESSING WITH THE INTENT TO DISTRIBUTE, AND

20  DISTRIBUTING, COCAINE POWDER AND COCAINE BASE OR "CRACK."

21  TITLE 21 UNITED STATES CODE SECTION 846 MAKES IT A SEPARATE

22  FEDERAL CRIME FOR ANYONE TO CONSPIRE OR AGREE WITH SOMEONE

23  ELSE TO DO SOMETHING WHICH, IF ACTUALLY CARRIED OUT, WOULD BE

24  A VIOLATION OF SECTION 841(A)(1).  SECTION 841(A)(1) MAKES IT

25  A CRIME FOR ANYONE TO KNOWINGLY POSSESS COCAINE OR COCAINE

1218

1    BASE WITH THE INTENT TO DISTRIBUTE IT, AND TO DISTRIBUTE

2    COCAINE OR COCAINE BASE.

3         UNDER THE LAW, A "CONSPIRACY" IS A KIND OF AGREEMENT

4    OR A KIND OF "PARTNERSHIP IN CRIMINAL PURPOSE" IN WHICH EACH

5    MEMBER BECOMES THE AGENT OR PARTNER OF EVERY OTHER MEMBER.

6         IN ORDER TO ESTABLISH A CONSPIRACY OFFENSE, IT IS

7    NOT NECESSARY FOR THE GOVERNMENT TO PROVE THAT ALL OF THE

8    PEOPLE NAMED IN THE INDICTMENT WERE MEMBERS OF THE SCHEME, OR

9    THAT THOSE WHO WERE MEMBERS HAD ENTERED INTO ANY EXPRESS

10   FORMAL TYPE OF AGREEMENT; OR THAT THEY DIRECTLY STATED AMONG

11   THEMSELVES THE DETAILS OF THE SCHEME AND ITS OBJECT OR

12   PURPOSE, OR THE PRECISE MEANS BY WHICH THE OBJECT OR PURPOSE

13   WAS TO BE ACCOMPLISHED.  ALSO, BECAUSE THE ESSENCE OF A

14   CONSPIRACY OFFENSE IS THE MAKING OF THE SCHEME ITSELF, IT IS

15   NOT NECESSARY FOR THE GOVERNMENT TO PROVE THAT THE

16   CONSPIRATORS ACTUALLY SUCCEEDED IN ACCOMPLISHING THEIR

17   UNLAWFUL PLAN.

18        NOW, MEMBERS OF THE JURY, WITH REGARD TO EACH

19   INDIVIDUAL DEFENDANT, MELVIN ADAMS, ALLEN MORSLEY, ALSO KNOWN

20   AS RALEEK, ALSO KNOWN AS BALDHEAD, AND TUVAL MCKOY, THE

21   GOVERNMENT MUST PROVE EACH OF THE FOLLOWING ELEMENTS OF

22   CONSPIRACY TO YOU BEYOND A REASONABLE DOUBT:

23        FIRST:  THAT TWO OR MORE PERSONS IN SOME WAY OR

24   MANNER, CAME TO A MUTUAL UNDERSTANDING TO TRY TO ACCOMPLISH

25   THE COMMON AND UNLAWFUL PLAN CHARGED IN THE INDICTMENT; AND

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

1   MENTIONED CONCERNING YOUR ASSESSMENT OF THE CREDIBILITY OF ANY

2   WITNESS IN GENERAL, AND SHOULD ALSO CONSIDER, IN PARTICULAR,

3   WHETHER THE WITNESS HAD AN ADEQUATE OPPORTUNITY TO OBSERVE THE

4   PERSON IN QUESTION AT THE TIME OR TIMES ABOUT WHICH THE

5   WITNESS TESTIFIED.  YOU MAY CONSIDER, IN THAT REGARD, SUCH

6   MATTERS AS THE LENGTH OF TIME THE WITNESS HAD TO OBSERVE THE

7   PERSON IN QUESTION, THE PREVAILING CONDITIONS AT THAT TIME IN

8   TERMS OF VISIBILITY OR DISTANCE AND THE LIKE, AND WHETHER THE

9   WITNESS HAD KNOWN OR OBSERVED THE PERSON AT AN EARLIER TIME.

10         YOU MAY ALSO CONSIDER THE CIRCUMSTANCES SURROUNDING

11  THE IDENTIFICATION ITSELF INCLUDING, FOR EXAMPLE, THE MANNER

12  IN WHICH A DEFENDANT WAS PRESENTED TO THE WITNESS FOR

13  IDENTIFICATION, AND THE LENGTH OF TIME THAT ELAPSED BETWEEN

14  THE INCIDENT IN QUESTION AND THE NEXT OPPORTUNITY THE WITNESS

15  HAD TO OBSERVE THE DEFENDANT.

16         IF, AFTER EXAMINING ALL OF THE TESTIMONY AND

17  EVIDENCE IN THE CASE, YOU HAVE A REASONABLE DOUBT AS TO THE

18  IDENTIFY OF A DEFENDANT AS THE PERPETRATOR OF THE OFFENSES

19  WITH WHICH HE IS CHARGED, YOU MUST FIND THAT DEFENDANT NOT

20  GUILTY.

21         YOU HAVE HEARD EVIDENCE THAT A DEFENDANT

22  SUBSEQUENTLY COMMITTED AN ACT SIMILAR TO THOSE CHARGED IN THIS

23  CASE.  YOU MAY NOT USE THIS EVIDENCE TO DECIDE WHETHER THE

24  DEFENDANT, ALLEN MORSLEY, ALSO KNOWN AS RALEEK, ALSO KNOWN AS

25  BALDHEAD, CARRIED OUT THE ACTS INVOLVED IN THE CRIMES CHARGED

1212

1    HERE.   HOWEVER, IF YOU ARE CONVINCED BEYOND A REASONABLE

2    DOUBT, BASED ON OTHER EVIDENCE INTRODUCED, THAT HE DID CARRY

3    OUT THE ACTS INVOLVED IN THE CRIMES CHARGED HERE, THEN YOU MAY

4    USE THIS EVIDENCE CONCERNING A SUBSEQUENT ACT TO DECIDE

5    WHETHER HE POSSESSED THE INTENT TO COMMIT THE OFFENSES CHARGED

6    IN THE INDICTMENT.

7          REMEMBER, EVEN IF YOU FIND THAT THE DEFENDANT MAY

8    HAVE COMMITTED A SIMILAR ACT, THIS IS NOT EVIDENCE THAT HE

9    COMMITTED SUCH AN ACT IN THIS CASE.  YOU MAY NOT CONVICT A

10   PERSON SIMPLY BECAUSE YOU BELIEVE HE MAY HAVE SUBSEQUENTLY

11   COMMITTED SIMILAR ACTS.  THE DEFENDANT IS ON TRIAL ONLY FOR

12   THE CRIMES CHARGED, AND YOU MAY CONSIDER THE EVIDENCE OF

13   SUBSEQUENT ACTS ONLY ON THE ISSUE OF INTENT, KNOWLEDGE,  OR

14   MOTIVE.

15         DURING THE COURSE OF THE TRIAL, AS YOU KNOW FROM THE

16   INSTRUCTION I GAVE YOU AT THE TIME, TESTIMONY OR EVIDENCE WAS

17   RECEIVED WITH RESPECT TO ALLEN MORSLEY, ALSO KNOWN AS RALEEK,

18   ALSO KNOWN AS BALDHEAD, ALLEGEDLY BEING IN POSSESSION OF

19   COCAINE ON SEPTEMBER 23, 1993, AT THE KIDD STREET HOUSE.  HE

20   IS NOT CHARGED IN THE INDICTMENT FOR ANY OFFENSE RELATING TO

21   THOSE DRUGS OR EVENTS OCCURRING ON THAT DATE.  THE TESTIMONY

22   REGARDING THE EVENTS ON SEPTEMBER 23, IN WHICH ALLEN MORSLEY,

23   ALSO KNOWN AS RALEEK, ALSO KNOWN AS BALDHEAD, POSSESSED

24   COCAINE, AT MOST, CONSTITUTES EVIDENCE OF "SIMILAR ACTS" IN

25   RELATION TO THOSE ALLEGED IN THE INDICTMENT.

1213

1    EVIDENCE THAT AN ACT WAS DONE AT ONE TIME, OR ON ONE

2  OCCASION, IS NOT ANY EVIDENCE OR PROOF WHATEVER THAT A SIMILAR

3  ACT WAS DONE AT ANOTHER TIME, OR ON ANOTHER OCCASION.  THAT IS

4  TO SAY, EVIDENCE THAT A DEFENDANT MAY HAVE COMMITTED AN ACT

5  SIMILAR TO THE ACTS ALLEGED IN THE INDICTMENT MAY NOT BE

6  CONSIDERED BY THE JURY IN DETERMINING WHETHER HE IN FACT

7  COMMITTED ANY ACT CHARGED IN THE INDICTMENT.

8    NOR MAY EVIDENCE OF SOME OTHER ACT OF A LIKE NATURE

9  BE CONSIDERED FOR ANY PURPOSE WHATEVER, UNLESS THE JURY FIRST

10  FINDS THAT THE OTHER EVIDENCE IN THE CASE, STANDING ALONE,

11  ESTABLISHES BEYOND A REASONABLE DOUBT THAT THE DEFENDANT DID

12  THE PARTICULAR ACT CHARGED IN THE PARTICULAR COUNT OF THE

13  INDICTMENT THEN UNDER DELIBERATION.

14    IF THE JURY SHOULD FIND BEYOND A REASONABLE DOUBT

15  FROM OTHER EVIDENCE IN THE CASE THAT THE DEFENDANT, ALLEN

16  MORSLEY, ALSO KNOWN AS RALEEK, ALSO KNOWN AS BALDHEAD, DID THE

17  ACT CHARGED IN THE PARTICULAR COUNT UNDER DELIBERATION, THEN

18  YOU MAY CONSIDER EVIDENCE AS TO AN ALLEGED ACT OF A LIKE

19  NATURE, IN DETERMINING THE STATE OF MIND OR INTENT WITH WHICH

20  HE DID THE ACT CHARGED IN THE PARTICULAR COUNT.  AND WHERE

21  PROOF OF AN ALLEGED ACT OF A LIKE NATURE IS ESTABLISHED BY

22  EVIDENCE WHICH IS CLEAR AND CONCLUSIVE, THE JURY MAY, BUT IS

23  NOT OBLIGED, TO DRAW THE INFERENCE AND FIND THAT, IN DOING THE

24  ACT CHARGED IN THE PARTICULAR COUNT UNDER DELIBERATION, THE

25  DEFENDANT ACTED WILLFULLY, AND NOT BECAUSE OF MISTAKE OR

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

UNITED STATES OF AMERICA,        )
                                 )
                PLAINTIFF,       )
                                 )
        vs.                      )    No. 93-102-07-CR-5-F
                                 )
JOHN DOE,                        )    September 27, 1993
                                 )    Raleigh, NC
                DEFENDANT.       )
                                 )

TRANSCRIPT OF DETENTION HEARING

BEFORE THE HONORABLE ALEXANDER B. DENSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:        CHRIS HAMILTON
                          ASSISTANT UNITED STATES ATTORNEY
                          310 NEW BERN AVENUE, SUITE 800
                          RALEIGH, NC  27611

FOR THE DEFENDANT:        BRIDGETT BRITT AGUIRRE, ESQUIRE
                          101 HAMPTON SQUARE
                          FUQUAY-VARINA, NC  27526

FILED

FEB 1 8 1998

U.S. Court of Appeals
Fourth Circuit

ORIGINAL

2

# T A B L E   O F   C O N T E N T S

                                                                PAGE

EXAMINATION

   AGENT MICHAEL J. FANELLY
        BY MS. HAMILTON        DIRECT              5
        BY MS. BRITT AGUIRRE   CROSS               7


ADJOURNMENT                                      15


REPORTER'S CERTIFICATE                           16

No. 93-102-07-CR-5-F

1               P R O C E E D I N G S

2               (REPORTER'S NOTE:  THE FOLLOWING TRANS

3       BEEN PREPARED FROM A TAPE PROVIDED BY THE CLERK'S

4               THE COURT:          GOOD AFTERNOON.  F

5       SEATED AND COME TO ORDER.  COURT'S IN SESSION.

6               MS. HAMILTON:       GOOD AFTERNOON, YO

7               THE COURT:          WE HAVE A DETENTIO

8       AT THIS TIME IN THE CASE OF THE UNITED STATES VER

9       DOE, THE COURT'S FILE 93-102-07-CRIMINAL-5-F.  TH

10      WILL SHOW THAT THE GOVERNMENT IS REPRESENTED BY A

11      U. S. ATTORNEY CHRIS HAMILTON.  THE DEFENDANT IS

12      AND REPRESENTED BY MS. BRIDGETT BRITT AGUIRRE.

13               I'LL HEAR FROM THE GOVERNMENT NOW, MS.

14              MS. HAMILTON:       YOUR HONOR, THE GO

15      CONTINUES TO SEEK DETENTION IN THIS CASE, AND WOU

16      THE COURT PURSUANT TO TITLE 18, SECTION 3142(3),

17      DEFENDANT SHALL BE PRESUMED THAT NO CONDITION OR

18      COMBINATION OF CONDITIONS COULD ALLOW HIM TO BE R

19      SUBJECT, OF COURSE, TO REBUTTAL.

20               THERE HAS BEEN ABSOLUTELY NOTHING PUT

21      HE'S REFUSED TO PROVIDE ANY INFORMATION TO PRE-TR

22      SERVICES, AND I WOULD MAINTAIN THAT THE DEFENDANT

23      FAILED TO MEET ANY REBUTTAL OF PRESUMPTION AND WE

24      THE COURT DETAIN HIM PURSUANT TO THAT SECTION AND

25      TESTIMONY IN THIS REGARD WOULD BE UNNECESSARY.

*No. 93-102-07-CR-5-F*                                                    4

1          THE COURT:          MS. BRITT AGUIRRE, THE

2    GOVERNMENT HAS TAKEN THE POSITION THAT THE BURDEN IS ON THE

3    DEFENDANT SINCE THE REBUTTABLE PRESUMPTION HAS ARISEN BY

4    WAY OF THE CHARGES IN THIS CASE.  WHAT DOES DEFENDANT SAY?

5          MS. BRITT AGUIRRE:  YOUR HONOR, I WOULD NORMALLY

6    AGREE WITH THAT IF THERE WAS NO EVIDENCE AND IF WE HAD THE

7    IDENTITY OF THE DEFENDANT.  HOWEVER, IN THIS CASE, I THINK

8    THAT IT IS THE GOVERNMENT'S POSITION, FIRST, TO PROVE THAT

9    THIS INDIVIDUAL IS IN FACT THE MAN NAMED AS JOHN DOE IN THE

10   INDICTMENT, AND THAT THIS INDIVIDUAL BE SATISFACTORY UNTO

11   YOU WHO CAN IDENTIFY THIS MAN AS THAT JOHN DOE AND AS THE

12   MAN NAMED IN THE INDICTMENT, AND UNTIL HIS IDENTIFICATION

13   IS ESTABLISHED, THEN WE SHOULD NOT BE ABLE TO--YOU SHOULD

14   NOT HOLD THIS MAN.

15         THE COURT:          ISN'T THAT REASONABLE, MS.

16   HAMILTON?

17         MS. HAMILTON:          YOUR HONOR, ON THE ISSUE OF

18   IDENTITY, THE GOVERNMENT IS PREPARED TO PUT ON EVIDENCE.

19         THE COURT:          VERY WELL.

20         MS. HAMILTON:          JUST ONE MOMENT, YOUR HONOR.

21         (PAUSE.)

22         MS. HAMILTON:          THE UNITED STATES CALLS

23   SPECIAL AGENT MIKE FANELLY.

24         THE COURT:          COME FORWARD, SIR.

25         (WHEREUPON,

No. 93-102-07-CR-5-F                                                    5

1                        MICHAEL J. FANELLY

2    WAS CALLED AS A WITNESS, DULY SWORN, AND TESTIFIED AS

3    FOLLOWS:)

4              D I R E C T   E X A M I N A T I O N

5              BY MS. HAMILTON:

6         Q.   AGENT FANELLY, IF YOU WOULD PLEASE, STATE YOUR

7    FULL AND COMPLETE NAME.

8         A.   MICHAEL J. FANELLY, THAT'S SPELLED

9    F-A-N-E-L-L-Y.

10        Q.   AND HOW ARE YOU EMPLOYED, AGENT FANELLY?

11        A.   BY THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS.

12        Q.   AND HOW LONG HAVE YOU BEEN EMPLOYED WITH THE

13   A.T.F.

14        A.   THREE YEARS.

15        Q.   AND ARE YOU THE PRINCIPAL CASE AGENT IN THE CASE

16   OF THE UNITED STATES VERSUS CLYDE ANDRE' HENDRICKS, ET AL.,

17   AND IN PARTICULAR, JOHN DOE, A.K.A. RALEEK?

18        A.   YES, MA'AM.

19        Q.   DID YOU PARTICIPATE IN THE ARREST OF THE

20   INDIVIDUAL KNOWN TO YOU AS JOHN DOE, A.K.A. RALEEK?

21        A.   YES, MA'AM.

22        Q.   AND WHEN DID THAT TAKE PLACE?

23        A.   THURSDAY EVENING, SEPTEMBER 23RD.

24        Q.   AND AFTER THE DEFENDANT WAS ARRESTED, WHERE WAS

25   HE TAKEN?

No. 93-102-07-CR-5-F                                              6

1          A.    TO THE RALEIGH POLICE DEPARTMENT.

2          Q.    AND AFTER HE WAS TAKEN TO THE POLICE DEPARTMENT,

3    DID YOU HAVE HIM VIEWED BY ANYONE IN PARTICULAR?

4          A.    YES, MA'AM, I DID.

5          Q.    AND HOW DID YOU DO THIS?

6          A.    HE WAS LEFT IN AN INTERVIEW ROOM THAT HAD A TWO-

7    WAY MIRROR, AND WE HAD A CO-CONSPIRATOR IN THIS

8    INVESTIGATION LOOK THROUGH THE MIRROR AND IDENTIFY HIM AS

9    THE INDIVIDUAL JOHN DOE.

10         Q.    AND WHO IDENTIFIED HIM AS JOHN DOE, A.K.A.

11   RALEEK?

12         A.    FLETCHER JOHNSON.

13         Q.    AND IN ADDITION TO FLETCHER JOHNSON IDENTIFYING

14   THE DEFENDANT AS RALEEK, HAVE ANY OF THE OTHER CO-

15   DEFENDANTS BEEN SHOWN ANY PHOTOGRAPHS OF THIS INDIVIDUAL?

16         A.    YES, MA'AM.

17         Q.    AND WHO DID YOU SHOW A PHOTOGRAPH TO?

18         A.    STANLEY LEACH AND ANDRE' HENDRICKS.

19         Q.    AND WITH WHAT RESULT?

20         A.    THEY IDENTIFIED HIM AS JOHN DOE, A.K.A. RALEEK.

21         Q.    AND THAT IS THE INDIVIDUAL RALEEK THAT IS NAMED

22   IN THE INDICTMENT AS PARTICIPATING WITH THEM IN THE

23   CRIMINAL ENTERPRISE?

24         A.    YES, MA'AM.

25              MS. HAMILTON:        I HAVE NOTHING FURTHER, YOUR

*No. 93-102-07-CR-5-F*                                                  7

1    HONOR.

2                    THE COURT:          YOU MAY CROSS.

3                    C R O S S - E X A M I N A T I O N

4                    BY MS. BRITT AGUIRRE:

5        Q.    NOW, YOU INDICATED HIS ARREST WAS ON SEPTEMBER

6    23RD?

7        A.    YES, MA'AM.

8        Q.    AND HOW DID YOU KNOW TO ARREST THIS MAN?

9                    MS. HAMILTON:        OBJECTION.  RELEVANCE, YOUR

10   HONOR.

11                   THE COURT:          OVERRULED.

12                   THE WITNESS:         A CONFIDENTIAL INFORMANT

13   INFORMED ME THAT RALEEK WAS AT THE RESIDENCE IN QUESTION.

14                   BY MS. BRITT AGUIRRE:

15       Q.    NOW, WAS THERE ANYONE ELSE AT THAT RESIDENCE

16   WHEN YOU ARRIVED?

17       A.    YES, MA'AM.

18       Q.    OKAY.  HOW MANY PEOPLE WERE THERE?

19       A.    WHEN WE ACTUALLY MADE ENTRY, I BELIEVE THERE WAS

20   PROBABLY FIVE PEOPLE.

21       Q.    AND WERE THEY ALL MEN, WOMEN?

22       A.    ALL MEN.

23       Q.    HOW WERE YOU ABLE TO IDENTIFY THIS MAN AS YOUR

24   JOHN DOE?

25       A.    HE FIT THE DESCRIPTION WE HAD RECEIVED FROM

*No. 93-102-07-CR-5-F*                                                        8

1    ANOTHER INDIVIDUAL IN THE INVESTIGATION, AND THAT WE ALSO

2    RECEIVED INFORMATION ON THE SCENE THAT THAT WAS THE

3    INDIVIDUAL WE WERE LOOKING FOR.

4          Q.    AND WHO ON THE SCENE INDICATED THAT THIS WAS

5    RALEEK?

6          A.    AN INDIVIDUAL THAT WAS IN THE RESIDENCE.

7          Q.    DO YOU KNOW THAT INDIVIDUAL'S NAME?

8                MS. HAMILTON:        OBJECTION, YOUR HONOR.

9    RELEVANCE.

10               THE COURT:        OVERRULED.

11               THE WITNESS:        NO, MA'AM, I DO NOT KNOW HIS

12   NAME.

13               BY MS. BRITT AGUIRRE:

14         Q.    OKAY.  HAD YOU EVER RECEIVED ANY INFORMATION

15   FROM THAT INDIVIDUAL BEFORE?

16         A.    NO, I DID NOT.

17         Q.    DID YOU KNOW ANYTHING ABOUT THAT INDIVIDUAL THAT

18   WAS IN THE RESIDENCE?

19         A.    PERSONALLY, NO, I DID NOT.

20         Q.    WAS HE THE ONLY PERSON WHO INDICATED THAT THIS

21   MAN WAS RALEEK?

22         A.    AT THAT MOMENT, YES, MA'AM.

23         Q.    SINCE THAT TIME HAVE OTHERS IN THAT RESIDENCE

24   INDICATED THIS MAN IS RALEEK?

25         A.    I HAVE NOT ASKED ANYBODY ELSE IN THAT RESIDENCE

*No. 93-102-07-CR-5-F*                                                         9

1    SINCE THAT TIME.

2         Q.   NOW, AFTER YOU TOOK HIM TO THE RALEIGH POLICE

3    DEPARTMENT, DID YOU PUT HIM IN A LINE-UP WITH OTHER MEN?

4         A.   NO, MA'AM.

5         Q.   SO WHEN HE WAS OBSERVED HE WAS THE ONLY PERSON

6    IN THE ROOM?

7         A.   YES, MA'AM--WELL, NO, THAT'S NOT TRUE.   THERE

8    WAS AN AGENT--OR RALEIGH POLICE OFFICER MOSS WAS IN THE

9    ROOM.

10        Q.   OKAY.   YOU'RE POINTING TO SOMEONE AND---

11        A.   EXCUSE ME--DETECTIVE MOSS.

12        Q.   NOW, DID THE INDIVIDUAL--I BELIEVE YOU SAID HE

13   WAS IDENTIFIED BY A PERSON BY THE NAME OF FLETCHER JOHNSON?

14        A.   YES, MA'AM.

15        Q.   AND MR. JOHNSON KNEW THAT HE WAS THERE TO

16   IDENTIFY A JOHN DOE?

17        A.   YES, MA'AM.

18        Q.   AND THIS MAN WAS THE ONLY BLACK INDIVIDUAL IN

19   THE ROOM?

20        A.   YES, MA'AM.

21        Q.   AND BLACK MALE IN THE ROOM?

22        A.   YES, MA'AM.

23        Q.   BEFORE YOU ARRESTED HIM, DID YOU HAVE A

24   PHOTOGRAPH OF HIM?

25        A.   BEFORE WE ARRESTED HIM?   NO, MA'AM.

*No. 93-102-07-CR-5-F*                                                    10

1          Q.   YOU INDICATED THAT YOU ALSO SHOWED SOME

2    PHOTOGRAPHS OF THIS INDIVIDUAL TO MR. LEACH AND HENDRICKS;

3    IS THAT CORRECT?

4          A.   YES, MA'AM.

5          Q.   NOW, WHAT KIND OF PHOTOGRAPHS DID YOU SHOW?

6          A.   A POLAROID PHOTOGRAPH.

7          Q.   WHEN WAS IT TAKEN?

8          A.   THE NIGHT OF THE ARREST--NO, EXCUSE ME.  IT WAS

9    THE NEXT MORNING WHEN HE WAS PUT THROUGH HIS PROCEDURES

10   HERE AT THE FEDERAL BUILDING, WHEN HE WAS FINGERPRINTED AND

11   A PHOTO WAS TAKEN AT THE TIME.

12         Q.   WHEN YOU TOOK THAT PHOTO AND SHOWED IT TO MR.

13   LEACH, DID YOU SHOW HIM ANY OTHER PHOTOGRAPHS?

14         A.   NO, MA'AM, I DID NOT.

15         Q.   AND WHEN YOU TOOK THIS PHOTO AND SHOWED IT TO

16   MR. HENDRICKS, DID YOU SHOW HIM ANY OTHER PHOTOGRAPHS?

17         A.   NO, I DID NOT.

18         Q.   WHEN YOU WENT TO THEM THEY KNEW THAT THEY WERE

19   TRYING TO IDENTIFY JOHN DOE?

20         A.   NO, THEY DID NOT.  I SHOWED THEM THE PHOTOGRAPH

21   AND I ASKED THEM, "CAN YOU TELL ME ABOUT THE PHOTOGRAPH?"

22   AND THEN THEY MADE A GESTURE THAT THAT WAS THE INDIVIDUAL

23   THAT WE WERE LOOKING FOR.

24         Q.   WHAT DID THEY IDENTIFY--WHO DID THEY IDENTIFY

25   THE PICTURE AS BEING?

*No. 93-102-07-CR-5-F*                                                          11

1        A.    AN INDIVIDUAL THAT WE KNEW AS RALEEK.

2        Q.    DID ANYBODY IDENTIFY HIM IN THE PICTURE AS "BALD

3   HEAD?"

4        A.    NO, MA'AM, I DON'T BELIEVE SO.

5        Q.    HAVE YOU SEEN A COPY OF THE INDICTMENT AGAINST

6   THIS INDIVIDUAL?

7        A.    YES, I HAVE.

8        Q.    AND ISN'T HE ALSO REFERRED TO IN THERE IN PLACES

9   AS "BALD HEAD," AS WELL AS "RALEEK?"

10       A.    YES, MA'AM.

11       Q.    WHERE DID YOU LEARN THE NAME "BALD HEAD?"

12       A.    FLETCHER JOHNSON ALSO CALLED HIM "BALD HEAD" AS

13  WELL AS RALEEK.

14       Q.    DID HE CONFIRM THAT IDENTIFICATION AS BEING THE

15  SAME PERSON WHEN HE LOOKED AT HIM THROUGH THE ROOM?

16       A.    ON A PREVIOUS OCCASION, MA'AM, HE HAD TOLD US

17  THAT "BALD HEAD" AND RALEEK WERE ONE IN THE SAME

18  INDIVIDUAL.

19       Q.    DID EITHER OF THE OTHER TWO EVER IDENTIFY HIM AS

20  "BALD HEAD" OR BY THE NAME OF "BALD HEAD?"

21       A.    MR. LEACH STATED THAT HE WAS ALSO KNOWN AS "BALD

22  HEAD," BUT HE HAD TOLD ME THAT FLETCHER JOHNSON PRIMARILY

23  CALLED HIM "BALD HEAD" AND HE DID NOT KNOW WHY.

24       Q.    YOU WOULD THINK THAT IT WOULD BE SOMEBODY THAT

25  WAS BALD, THOUGH, WOULDN'T YOU?

No. 93-102-07-CR-5-F                                              12

1        A.    NOT NECESSARILY, MA'AM.   THEY CALL LARGE

2    INDIVIDUALS "TINY" SOMETIMES.   KIND OF LIKE A PLAY ON

3    WORDS.

4        Q.    OR OPPOSITE, MAYBE, SOMEBODY THAT HAD A LOT OF

5    HAIR?

6        A.    MAYBE.

7        Q.    HAS ANYONE ELSE OTHER THAN THOSE INDIVIDUALS

8    IDENTIFIED THIS MAN?

9        A.    OTHER THAN THE FOUR INDIVIDUALS I TOLD YOU

10   ABOUT?  NO, MA'AM.

11       Q.    WE'VE GOT MR. HENDRICKS, MR. LEACH AND MR.

12   JOHNSON.  IS THERE A FOURTH?

13       A.    YES, MA'AM.  AN INDIVIDUAL IN THE RESIDENCE WHEN

14   WE WERE THERE, HE TOLD US.  WE DIDN'T ASK HIM WHO THIS

15   INDIVIDUAL WAS.  HE VOLUNTEERED THE INFORMATION TO US.

16       Q.    ANYONE ELSE IN THE INDICTMENT, ANYONE WHO

17   IDENTIFIED THIS GENTLEMAN AS RALEEK?

18       A.    NOT THAT I'M AWARE OF.

19       Q.    WERE THERE EVER ANY CONTROLLED SALES AS A PART

20   OF THIS INDICTMENT?

21            MS. HAMILTON:      YOUR HONOR, I'M GOING TO

22   OBJECT.  NOW I THINK WE'RE GETTING INTO DISCOVERY.  THE

23   ISSUE BEFORE THE COURT IS ONE OF IDENTITY.  WE'VE

24   ESTABLISHED PROBABLE CAUSE IN THE CASE AND THERE'S BEEN NO

25   TESTIMONY ON ANYTHING ON DIRECT OTHER THAN IDENTITY.  WE'RE

No. 93-102-07-CR-5-F                                    13

1    CLEARLY BEYOND THE SCOPE OF THE DIRECT AND WE'RE BEYOND THE

2    ISSUE OF IDENTITY.

3              THE COURT:        MS. BRITT AGUIRRE?

4              MS. BRITT AGUIRRE:  YOUR HONOR, THE CONTROLLED

5    SALE WOULD INDICATE IF THERE WAS AN AGENT WHO HAD THE

6    OPPORTUNITY TO OBSERVE THIS INDIVIDUAL PURCHASING AN ITEM

7    OR ITEMS FROM ANY OF THE PEOPLE NAMED IN THE CONSPIRACY.

8    AND I THINK THAT WOULD HELP TO CLEAR UP, IF IN FACT THIS IS

9    THE SAME PERSON THAT WAS INVOLVED IN THAT TRANSACTION.

10             THE COURT:        OBJECTION OVERRULED.  YOU

11   MAY ANSWER.

12             THE WITNESS:       COULD YOU REPEAT THE

13   QUESTION, PLEASE?

14             BY MS. BRITT AGUIRRE:

15        Q.   WERE THERE ANY CONTROLLED PURCHASES OF EITHER

16   FIREARMS OR ANY TYPE OF A NARCOTIC SUBSTANCE THAT IS THE

17   BASIS FOR THIS INDICTMENT?

18             THE COURT:        WELL, AS AGAINST THE

19   INDIVIDUAL KNOWN AS RALEEK.

20             BY MS. BRITT AGUIRRE:

21        Q.   KNOWN AS RALEEK?

22        A.   NO, MA'AM, THERE WAS NOT.

23             MS. BRITT AGUIRRE:  I HAVE NO FURTHER QUESTIONS,

24   YOUR HONOR.

25             THE COURT:        REDIRECT.

*No. 93-102-07-CR-5-F*                                          14

1        MS. HAMILTON:        I HAVE NOTHING FURTHER, YOUR

2   HONOR.

3        THE COURT:           YOU MAY STEP DOWN.

4        ANYTHING FURTHER FOR THE GOVERNMENT?

5        MS. HAMILTON:        NO, YOUR HONOR.

6        THE COURT:           ANYTHING FOR THE DEFENDANT?

7        MS. BRITT AGUIRRE:  NO, YOUR HONOR.

8        THE COURT:           VERY WELL.

9        THE COURT FINDS THE IDENTITY ISSUE TO BE

10  ESTABLISHED TO THE COURT'S SATISFACTION THAT THE PERSON

11  NAMED AND THE PERSON PRESENT IN THE COURT IS IN FACT THE

12  INDIVIDUAL WHO IS CHARGED IN THE INDICTMENT.

13       THE COURT ALSO FINDS FROM THE CHARGES IN THE

14  INDICTMENT THAT THE REBUTTABLE PRESUMPTION OF DETENTION

15  ARISES.  UNLESS THE DEFENDANT HAS SOMETHING TO OFFER, I

16  WILL AUTOMATICALLY ORDER HIM DETAINED.

17       MS. BRITT AGUIRRE:  YOUR HONOR, AT THIS TIME I

18  DO WANT TO ESTABLISH HIS NAME.

19       THE COURT:           VERY WELL.

20       MS. BRITT AGUIRRE:  HIS NAME IS AMNI, A-M-N-I,

21  CONAO, C-O-N-A-O.

22       MS. HAMILTON:        YOUR HONOR, AT THIS TIME I

23  WOULD OPPOSE PUTTING THAT NAME IN AS THE NAME ATTRIBUTABLE

24  TO THE DEFENDANT IN THE INDICTMENT.  HE'S PROVIDED THAT

25  NAME TO VARIOUS MEMBERS OF THE LAW ENFORCEMENT COMMUNITY

No. 93-102-07-CR-5-F                                              15

1    OVER THE PAST SEVERAL DAYS, EACH TIME WITH A DIFFERENT

2    SPELLING.  HE'S PROVIDED NO AUTHENTICATION IN TERMS OF A

3    DRIVER'S LICENSE, A BIRTH CERTIFICATE, ANYTHING THAT WOULD

4    SUBSTANTIATE THAT THAT IS IN FACT WHAT HIS REAL NAME IS.

5              THE COURT:          THE GOVERNMENT CONTROLS THE

6    NAMES WHICH YOU LIST IN THE INDICTMENT, MS. HAMILTON.  IF

7    YOU DON'T WANT TO MOVE TO AMEND THE INDICTMENT TO CHANGE

8    THE NAME, THEN IT WON'T BE DONE.

9              MS. HAMILTON:       I DO NOT MOVE.

10             THE COURT:          ALL RIGHT.

11             DOES THE DEFENDANT WISH TO OFFER ANYTHING ELSE?

12             MS. BRITT AGUIRRE:  JUST ONE MOMENT, YOUR HONOR.

13             (PAUSE.)

14             MS. BRITT AGUIRRE:  NOTHING FURTHER AT THIS

15   TIME, YOUR HONOR.

16             THE COURT:          VERY WELL.  I ORDER THE

17   DEFENDANT DETAINED PENDING TRIAL.  THAT CONCLUDES THIS

18   DETENTION HEARING.

19             (END OF TAPE.)

20             (END OF TRANSCRIPT.)

21

22

23

24

25

No. 93-102-07-CR-5-F                                                    16

STATE OF NORTH CAROLINA

COUNTY OF WAKE


                              CERTIFICATE

          I, CAROL W. WILLIAMS, CERTIFIED VERBATIM

REPORTER, COURT REPORTER AND NOTARY PUBLIC FOR THE STATE OF

NORTH CAROLINA, COUNTY OF WAKE, HEREBY CERTIFY THAT THE

FOREGOING PAGES REPRESENT THE ENTIRE RECORD OF THE TAPE

RECORDED DETENTION HEARING BEFORE THE UNITED STATES

DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA,

THE HONORABLE ALEXANDER B. DENSON PRESIDING, IN THE MATTER

OF THE UNITED STATES OF AMERICA VERSUS JOHN DOE, AND THESE

PAGES CONSTITUTE THE ORIGINAL TRANSCRIPT OF THE PROCEEDING.

          IN WITNESS WHEREOF, I HAVE HEREUNTO AFFIXED MY

HAND THIS 17TH DAY OF NOVEMBER, 1993.




                              CAROL W. WILLIAMS
                              CERTIFIED VERBATIM REPORTER
                              NOTARY PUBLIC, STATE OF
                                 NORTH CAROLINA


MY COMMISSION EXPIRES:  JUNE 7, 1994

[[ EXHIBIT A-1 ]]
--------------------

2

```
 1              P R O C E E D I N G S              9:25 A.M.
 2         (DEFENDANT PRESENT.)
 3         (THE FOLLOWING TRANSPIRED DURING CALENDAR CALL.)
 4         THE COURT:  JOHN RALEEK.
 5         MR. COOPER:  YOUR HONOR, MY NAME'S ROBERT COOPER.  I
 6    REPRESENT AMNI CANOA, WHO THE GOVERNMENT ALLEGES IS JOHN DOE,
 7    A/K/A RALEEK, AND HE DENIES IDENTIFICATION.
 8         THE COURT:  ALL RIGHT, SIR.
 9         MR. COOPER:  HE IS PRESENT IN THE COURTROOM.
10         THE COURT:  WHAT DO YOU SAY THE DEFENDANT'S NAME IS?
11         MR. COOPER:  AMNI CANOA.
12         THE COURT:  IF YOU'LL WRITE THAT DOWN FOR ME, PLEASE,
13    AND HAND IT TO THE CLERK, SO I'LL BE ABLE TO UNDERSTAND --
14    CORRECT HIS NAME.
15         I HAVE -- MR. COOPER -- IS IT MR. COOPER; IS THAT
16    CORRECT?
17         MR. COOPER:  YES, YOUR HONOR.
18         THE COURT:  I HAVE A MOTION TO AMEND THE INDICTMENT.
19    IT INDICATES THAT THE GOVERNMENT BELIEVES YOUR CLIENT'S CORRECT
20    NAME TO BE ALLEN MORSLEY; IS THAT CORRECT, MS. HAMILTON?
21         MS. HAMILTON:  YES, YOUR HONOR.  I FILED A MOTION TO
22    AMEND THE INDICTMENT BASED ON THE COMPUTER CHECKS AND THE
23    FINGERPRINTS ANALYSIS, THAT HE'S A FUGITIVE OUT OF NEW YORK AND
24    WANTED ON A HOMICIDE, YOUR HONOR.
25         THE COURT:  HAVE YOU SEEN A COPY OF THE MOTION?
```

[[ EXHIBIT A-2 ]]                                    3

1      MR. COOPER:  YES, YOUR HONOR; I RECEIVED THAT THIS

2  WEEK, AND WE WOULD CONTEST THAT MOTION.  WE DENY THAT HE IS

3  ALLEN MORSLEY, EITHER.

4      THE COURT:  MS. HAMILTON, LET ME SEE YOU AND MR.

5  COOPER JUST A MOMENT.

6      (BENCH CONFERENCE ON THE RECORD.)

7      THE COURT:  HE IS A CO-DEFENDANT WITH MCKOY.  THAT

8  CASE IS TO BE TRIED AND THE JURY SELECTED ON WEDNESDAY.

9      MR. COOPER:  THAT IS CORRECT.

10     THE COURT:  (PAUSE.)  WELL, I'M GOING TO ALLOW THE

11 MOTION TO AMEND.  AND AS I SEE IT, IT WOULD BE JUST A QUESTION

12 FOR THE JURY TO FIND WHETHER OR NOT HE IS, IN FACT, THE

13 DEFENDANT NAMED; WOULD YOU AGREE WITH THAT?

14     MR. COOPER:  WITH ALL DUE RESPECT, YOUR HONOR, I THINK

15 THAT THAT IS AN ISSUE THAT THE GRAND JURY MUST FIND, THAT HE IS

16 MR. MORSLEY, BEFORE WE COULD PROCEED TO TRIAL.

17     THE COURT:  WELL, I DON'T KNOW ABOUT THAT.

18     MR. COOPER:  I MEAN, THIS IS MORE THAN MERE MISNOMER.

19 THIS IS, I THINK, EQUIVALENT TO, IN A CIVIL CASE, WE WOULD

20 CONTEND, ADDING A NEW PARTY.  I MEAN, WE'RE NOT CONCEDING THAT

21 HE IS MR. MORSLEY.

22     THE COURT:  WELL, I UNDERSTAND THAT, BUT THE GRAND

23 JURY HAS INDICTED AN INDIVIDUAL, AS KNOWN TO IT, FOR -- AND

24 FOUND THAT THERE'S PROBABLE CAUSE TO BELIEVE THAT PARTICULAR

25 INDIVIDUAL COMMITTED WHATEVER THE CHARGED OFFENSE WAS.  WHETHER

[[ EXHIBIT A-3 ]]

4

1   OR NOT YOUR CLIENT IS, IN FACT, THAT INDIVIDUAL, I THINK IS A

2   STRAIGHT FACTUAL DETERMINATION TO BE MADE BY THE JURY.  IN OTHER

3   WORDS, REGARDLESS OF THE NAME USED IN THE INDICTMENT, THEY HAVE

4   INDICTED A PERSON.  THEY HAVE FOUND THAT THERE'S PROBABLE CAUSE

5   TO BELIEVE THAT THAT PERSON COMMITTED THE CHARGED OFFENSE.

6          THE ISSUE IS THAT -- I DON'T KNOW IF THEY HAVE TO RE-

7   INDICT YOUR MAN.  IT SEEMS TO ME THEY SIMPLY -- THE JURY JUST

8   HAS TO MAKE A DETERMINATION WHETHER OR NOT HE IS, IN FACT --

9   MAKE A FACTUAL DETERMINATION AS TO WHETHER OR NOT HE IS THE MAN

10  WHO IS CHARGED AND COMMITTED THE CRIME.

11         MR. COOPER:  YOUR HONOR, THE BASIS FOR ONE OF THE

12  MOTIONS THAT WE FILED, THAT YOU'VE RULED AS BEING UNTIMELY, IS

13  THAT THE IDENTIFICATION OF MY CLIENT AS THE PERSON THAT THE

14  GRAND JURY INDICTED IS ON SHAKY GROUNDS AND WAS DONE THROUGH

15  VERY SUGGESTIVE MEANS.  AND I WAS APPOINTED ONE DAY BEFORE THE

16  MOTIONS DEADLINE RAN OUT.  IT'S VERY DIFFICULT FOR ME TO --

17         THE COURT:  WELL, I'M NOT GOING TO CONTINUE THIS

18  TRIAL.  I CAN GUARANTEE YOU THAT THAT'S NOT GOING TO OCCUR.

19  YOUR MOTION IS ALLOWED.  I'LL SUBMIT THE ISSUE TO THE JURY AS TO

20  WHETHER OR NOT HE IS, IN FACT, THE PERSON CHARGED IN THE

21  INDICTMENT.  THANK YOU.

22         MR. COOPER:  WILL HE BE REQUIRED TO PLEAD THIS

23  MORNING, THEN?

24         THE COURT:  YES, SIR, HE CERTAINLY WILL.  THANK YOU.

25         (BENCH CONFERENCE CONCLUDED.)

[[ EXHIBIT A-4 ]]
----------------------
----------------------

FILED IN OPEN COURT

ON 12-3-93

David W. Daniel, Clerk
U. S. District Court
Eastern District of N. C.

(AO156(Rev.5/85) Verdict

---

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA

V.                                    **VERDICT**

                                    CASE NO. 93-102-07-CR-5F
ALLEN MORSLEY
a/k/a Raleek
a/k/a Baldhead

**WE, THE JURY FIND:**  the defendant, Allen Morsley, a/k/a Raleek,
a/k/a Baldhead,

_Guilty_        _Guilty_____, as to Count 1,

_Guilty_        _Guilty_____, as to Count 17,

_Guilty_        _Guilty_____, as to Count 18,

_Guilty_        _Guilty_____, as to Count 37,

_Guilty_        _Guilty_____, as to Count 44,

_Guilty_        _Guilty_____, as to Count 80,

_Guilty_        _Guilty_____, as to Count 81,

_Guilty_        _Guilty_____, as to Count 95.


_Allen Edwards_                 _12-3-93_
FOREPERSON'S SIGNATURE           DATE

39

1211

1  MENTIONED CONCERNING YOUR ASSESSMENT OF THE CREDIBILITY OF ANY

2  WITNESS IN GENERAL, AND SHOULD ALSO CONSIDER, IN PARTICULAR,

3  WHETHER THE WITNESS HAD AN ADEQUATE OPPORTUNITY TO OBSERVE THE

4  PERSON IN QUESTION AT THE TIME OR TIMES ABOUT WHICH THE

5  WITNESS TESTIFIED.  YOU MAY CONSIDER, IN THAT REGARD, SUCH

6  MATTERS AS THE LENGTH OF TIME THE WITNESS HAD TO OBSERVE THE

7  PERSON IN QUESTION, THE PREVAILING CONDITIONS AT THAT TIME IN

8  TERMS OF VISIBILITY OR DISTANCE AND THE LIKE, AND WHETHER THE

9  WITNESS HAD KNOWN OR OBSERVED THE PERSON AT AN EARLIER TIME.

10          YOU MAY ALSO CONSIDER THE CIRCUMSTANCES SURROUNDING

11  THE IDENTIFICATION ITSELF INCLUDING, FOR EXAMPLE, THE MANNER

12  IN WHICH A DEFENDANT WAS PRESENTED TO THE WITNESS FOR

13  IDENTIFICATION, AND THE LENGTH OF TIME THAT ELAPSED BETWEEN

14  THE INCIDENT IN QUESTION AND THE NEXT OPPORTUNITY THE WITNESS

15  HAD TO OBSERVE THE DEFENDANT.

16          IF, AFTER EXAMINING ALL OF THE TESTIMONY AND

17  EVIDENCE IN THE CASE, YOU HAVE A REASONABLE DOUBT AS TO THE

18  IDENTIFY OF A DEFENDANT AS THE PERPETRATOR OF THE OFFENSES

19  WITH WHICH HE IS CHARGED, YOU MUST FIND THAT DEFENDANT NOT

20  GUILTY.

21          YOU HAVE HEARD EVIDENCE THAT A DEFENDANT

22  SUBSEQUENTLY COMMITTED AN ACT SIMILAR TO THOSE CHARGED IN THIS

23  CASE.  YOU MAY NOT USE THIS EVIDENCE TO DECIDE WHETHER THE

24  DEFENDANT, ALLEN MORSLEY, ALSO KNOWN AS RALEEK, ALSO KNOWN AS

25  BALDHEAD, CARRIED OUT THE ACTS INVOLVED IN THE CRIMES CHARGED

1212

1   HERE.   HOWEVER, IF YOU ARE CONVINCED BEYOND A REASONABLE

2   DOUBT, BASED ON OTHER EVIDENCE INTRODUCED, THAT HE DID CARRY

3   OUT THE ACTS INVOLVED IN THE CRIMES CHARGED HERE, THEN YOU MAY

4   USE THIS EVIDENCE CONCERNING A SUBSEQUENT ACT TO DECIDE

5   WHETHER HE POSSESSED THE INTENT TO COMMIT THE OFFENSES CHARGED

6   IN THE INDICTMENT.

7            REMEMBER, EVEN IF YOU FIND THAT THE DEFENDANT MAY

8   HAVE COMMITTED A SIMILAR ACT, THIS IS NOT EVIDENCE THAT HE

9   COMMITTED SUCH AN ACT IN THIS CASE.   YOU MAY NOT CONVICT A

10  PERSON SIMPLY BECAUSE YOU BELIEVE HE MAY HAVE SUBSEQUENTLY

11  COMMITTED SIMILAR ACTS.   THE DEFENDANT IS ON TRIAL ONLY FOR

12  THE CRIMES CHARGED, AND YOU MAY CONSIDER THE EVIDENCE OF

13  SUBSEQUENT ACTS ONLY ON THE ISSUE OF INTENT, KNOWLEDGE,   OR

14  MOTIVE.

15           DURING THE COURSE OF THE TRIAL, AS YOU KNOW FROM THE

16  INSTRUCTION I GAVE YOU AT THE TIME, TESTIMONY OR EVIDENCE WAS

17  RECEIVED WITH RESPECT TO ALLEN MORSLEY, ALSO KNOWN AS RALEEK,

18  ALSO KNOWN AS BALDHEAD, ALLEGEDLY BEING IN POSSESSION OF

19  COCAINE ON SEPTEMBER 23, 1993, AT THE KIDD STREET HOUSE.   HE

20  IS NOT CHARGED IN THE INDICTMENT FOR ANY OFFENSE RELATING TO

21  THOSE DRUGS OR EVENTS OCCURRING ON THAT DATE.   THE TESTIMONY

22  REGARDING THE EVENTS ON SEPTEMBER 23, IN WHICH ALLEN MORSLEY,

23  ALSO KNOWN AS RALEEK, ALSO KNOWN AS BALDHEAD, POSSESSED

24  COCAINE, AT MOST, CONSTITUTES EVIDENCE OF "SIMILAR ACTS" IN

25  RELATION TO THOSE ALLEGED IN THE INDICTMENT.

1      EVIDENCE THAT AN ACT WAS DONE AT ONE TIME, OR ON ONE

2  OCCASION, IS NOT ANY EVIDENCE OR PROOF WHATEVER THAT A SIMILAR

3  ACT WAS DONE AT ANOTHER TIME, OR ON ANOTHER OCCASION.  THAT IS

4  TO SAY, EVIDENCE THAT A DEFENDANT MAY HAVE COMMITTED AN ACT

5  SIMILAR TO THE ACTS ALLEGED IN THE INDICTMENT MAY NOT BE

6  CONSIDERED BY THE JURY IN DETERMINING WHETHER HE IN FACT

7  COMMITTED ANY ACT CHARGED IN THE INDICTMENT.

8      NOR MAY EVIDENCE OF SOME OTHER ACT OF A LIKE NATURE

9  BE CONSIDERED FOR ANY PURPOSE WHATEVER, UNLESS THE JURY FIRST

10  FINDS THAT THE OTHER EVIDENCE IN THE CASE, STANDING ALONE,

11  ESTABLISHES BEYOND A REASONABLE DOUBT THAT THE DEFENDANT DID

12  THE PARTICULAR ACT CHARGED IN THE PARTICULAR COUNT OF THE

13  INDICTMENT THEN UNDER DELIBERATION.

14      IF THE JURY SHOULD FIND BEYOND A REASONABLE DOUBT

15  FROM OTHER EVIDENCE IN THE CASE THAT THE DEFENDANT, ALLEN

16  MORSLEY, ALSO KNOWN AS RALEEK, ALSO KNOWN AS BALDHEAD, DID THE

17  ACT CHARGED IN THE PARTICULAR COUNT UNDER DELIBERATION, THEN

18  YOU MAY CONSIDER EVIDENCE AS TO AN ALLEGED ACT OF A LIKE

19  NATURE, IN DETERMINING THE STATE OF MIND OR INTENT WITH WHICH

20  HE DID THE ACT CHARGED IN THE PARTICULAR COUNT.  AND WHERE

21  PROOF OF AN ALLEGED ACT OF A LIKE NATURE IS ESTABLISHED BY

22  EVIDENCE WHICH IS CLEAR AND CONCLUSIVE, THE JURY MAY, BUT IS

23  NOT OBLIGED, TO DRAW THE INFERENCE AND FIND THAT, IN DOING THE

24  ACT CHARGED IN THE PARTICULAR COUNT UNDER DELIBERATION, THE

25  DEFENDANT ACTED WILLFULLY, AND NOT BECAUSE OF MISTAKE OR