ORIGINAL

(31)
2-6-02
SC

# PETITIONERS RECORD IN SUPPORT OF ITS

# TRAVERES TO RESPONSE TO PETITION FOR

# HABEAS CORPUS ....

1-01-CV-1003



FILED
FEB 0 5 2002
PER _____
HARRISBURG, PA  DEPUTY CLERK

5 -Y


ATTACHMENT ---    GUN CONSPIRACY

1          (GOVERNMENT EXHIBITS NUMBER 182 THRU

2          252 WERE MARKED FOR IDENTIFICATION.)

3  A.   THAT'S A COPY OF A INVOICE FROM DAVIDSONS IN GREENSBORO

4  AS A SELLING OF GUNS TO JOHNSON FIREARMS IN ANGIER, NORTH

5  CAROLINA.

6  Q.   NOW, WHEN YOU SAY THIS IS A COPY, IS THIS AN ACTUAL

7  INVOICE OR A COMPUTER-GENERATED COPY?

8  A.   THIS IS A COMPUTER-GENERATED COPY, WHICH REPRESENTS OUR

9  FIREARMS RECORD.

10 Q.   NOW, DOES DAVIDSON KEEP THE RECORDS OF FIREARMS

11 TRANSACTIONS IN A COMPUTER BANK; IS THAT HOW THESE RECORDS ARE

12 KEPT?

13 A.   THAT'S CORRECT.  THE A.T.F. REQUIRES YOU TO KEEP A BOUND

14 BOOK, BUT IN TODAY'S VOLUME OF TRANSACTIONS YOU HAVE TO USE A

15 COMPUTER, SO WE HAVE APPROVAL FROM THE A.T.F. TO USE A

16 COMPUTER TO MAINTAIN THESE RECORDS.

17 Q.   AND THAT'S BECAUSE OF THE INCREDIBLE VOLUME?  IT WOULD BE

18 IMPOSSIBLE FOR YOU TO KEEP THESE BOUND BOOKS?

19 A.   IT WOULD BE VERY DIFFICULT.

20 Q.   NOW, CAN YOU RECOGNIZE THIS AS A DOCUMENT THAT YOU

21 RETRIEVED FROM THE COMPUTER-GENERATED RECORDS OF DAVIDSONS?

22 A.   THAT'S A COPY THAT WOULD HAVE BEEN PRINTED FROM OUR

23 COMPUTER.

24 Q.   FROM THE COMPUTER?  AND HOW DO YOU KNOW THAT?

25 A.   IT'S IN THE FORM AND SUBSTANCE THAT I RECOGNIZE.

FORM LASER BOND A PENGAD·INDY 1-800-631-6989

1  Q.    AND DOES THE COMPANY NAME APPEAR AT THE TOP?

2  A.    OUR CORPORATE NAME IS AT THE TOP, THE CUSTOMER NAME AND

3  ADDRESS IS ON THE LEFT.   THE SHIP TO ADDRESS IS ON THE RIGHT,

4  WHICH IN THIS PARTICULAR CASE IS THE SAME.

5  Q.    NOW, ANYWHERE ON THIS RECORD DOES IT REFLECT WHAT DAY

6  THIS TRANSACTIONS TOOK PLACE?   THE DATE OF THE TRANSACTION?

7  A.    THE DATE IS 9/18/91.

8  Q.    NOW, IF YOU WOULD, I NEED YOU TO FLIP THROUGH THIS BOOK

9  AND VERIFY THAT EACH ONE OF THE DOCUMENTS IN THIS BOOK -- AND

10 YOU CAN LOOK THROUGH ALL OF THEM AND TELL ME AFTER YOU LOOK

11 THROUGH ALL OF THESE DOCUMENTS, IF EACH ONE OF THESE REFLECT A

12 COMPUTER-GENERATED INVOICE FROM THE DAVIDSONS COMPANY.

13 A.    (WITNESS PERUSES DOCUMENTS.)  (PAUSE.)   THESE ARE ALL OUR

14 INVOICES.

15 Q.    WHEN YOU SAY "OUR," YOU MEAN FROM THE DAVIDSONS COMPANY?

16 A.    FOR THE DAVIDSON SUPPLY COMPANY AS SALES TO FLETCHER

17 JOHNSON AS JOHNSON FIREARMS.

18 Q.    WERE YOU REQUESTED TO PRODUCE ALL INVOICES FOR THE

19 TRANSACTIONS BETWEEN DAVIDSONS SUPPLY AND FLETCHER JOHNSON

20 FIREARMS?

21 A.    I RECEIVED A SUBPOENA TO PRODUCE TRUE COPIES OF ALL

22 INVOICES FROM COMPUTER-GENERATED FILES RELATING TO ALL SALES

23 TO FLETCHER JOHNSON, ROUTE 4 BOX 195A, ANGIER, NORTH CAROLINA

24 27501.

25 Q.    AND YOU THEN GENERATED A SEARCH OF THE COMPUTER RECORDS

FORM LASER BOND A PENGAD/INDY 1-800 631-6989

1   WHICH RESULTED IN THOSE DOCUMENTS?

2   A.   THAT'S CORRECT.

3        MS. HAMILTON:  YOUR HONOR, I WOULD AT THIS TIME MOV

4   IN GOVERNMENT EXHIBITS 182 THROUGH 252.

5        MR. DAVIS:  OBJECTION, YOUR HONOR, CAN WE APPROACH

6   THE BENCH ON THAT?

7        THE COURT:  YES, SIR.

8        (BENCH CONFERENCE ON THE RECORD.)

9        MR. DAVIS:  YOUR HONOR, SOME OF THOSE INVOICES

10  OCCURRED BEFORE JANUARY '92, WHICH IS OUTSIDE THE CONSPIRACY.

11  THE 182 WAS SEPTEMBER OF '91.

12       THE COURT:  WELL, THAT MAY BE TRUE, BUT IF THEY

13  REFER TO A FIREARM THAT WAS DISTRIBUTED DURING THE COURSE OF

14  THE CONSPIRACY, I DON'T KNOW THE ANSWER TO THAT.

15       MS. HAMILTON:  YOUR HONOR --

16       MR. COOPER:  THEY HAVEN'T LINKED THAT UP THAT I'M

17  AWARE OF.

18       THE COURT:  WELL, MY GUESS IS, THEY'RE GOING TO LINK

19  UP SOME FIREARMS TO THESE INVOICES.  I DON'T KNOW.

20       MS. HAMILTON:  YOUR HONOR, FLETCHER JOHNSON

21  TESTIFIED WHEN HE ACQUIRED HIS FIREARMS LICENSE, AND HE

22  TESTIFIED ABOUT HAVING BEGUN HIS OPERATION PRIOR TO JANUARY OF

23  '92.  AND HE ALSO STATED THAT HE HAD NUMEROUS FIREARMS, SOLD

24  THEM FROM TIME TO TIME, AND THESE FIREARMS ARE ULTIMATELY

25  LINKED BACK UP INTO THE INVOICES AS HAVING BEEN FIREARMS

FORM I LASER BOND A PENGAD/INDY 1-800-631-6989

703

1   DISTRIBUTED BY THE CONSPIRACY.  EVERY SINGLE INVOICE ISN'T

2   ULTIMATELY GOING TO BE AN INVOICE WHERE A FIREARM IS

3   DISTRIBUTED -- I MEAN, IS LINKED BACK UP.  BUT WE NEED THE

4   ENTIRETY OF THE DOCUMENTS IN ORDER FOR THE AGENT TO GO THROUGH

5   THE INVOICES AND FIND EACH FIREARM.

6           THE COURT:  WELL, HE'S NOT GOING TO LINK ALL OF

7   THEM, THOUGH; IS THAT CORRECT?

8           MS. HAMILTON:  THAT'S CORRECT, YOUR HONOR, BUT THE

9   TOTAL NUMBER OF FIREARMS IS EXTREMELY RELEVANT, ESPECIALLY

10  WHEN THE DATES OF THE CONSPIRACY ARE COMPARED WITH THE INVOICE

11  NUMBERS AND THE VOLUME OF THE FIREARMS IS --

12          THE COURT:  (INTERPOSING)  WELL, I DON'T REALLY

13  UNDERSTAND THE OBJECTION.  THE FIRST ONE THAT HE HAD THERE, I

14  DIDN'T MAKE A NOTE OF THE DATE.  WHAT WAS IT?

15          MR. DAVIS:  THE 18TH OF SEPTEMBER WAS THE FIRST,

16  NUMBER 182, THAT WAS THE DATE OF THAT INVOICE.

17          MS. HAMILTON:  9/18/91.

18          THE COURT:  WELL, MR. DAVIS MAKES THE ARGUMENT THAT

19  THE CONSPIRACY STARTED IN JANUARY.

20          MS. HAMILTON:  THE CONSPIRACY CHARGES ON OR ABOUT

21  JANUARY OF 1992.

22          THE COURT:  ALL RIGHT, THE OBJECTION'S OVERRULED.

23          MR. DAVIS:  NOTE THE OBJECTION.

24          (END OF BENCH CONFERENCE.)

25          MS. HAMILTON:  I HAVE NO FURTHER QUESTIONS OF THE

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

5-W

**ATTACHMENT --- INDICTMENT PAGES 1-12**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

F I L E D

JUL 6 '93

DAVID W. DANIEL, CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR.

NO. 93-102-01-CR-5-F
NO. 93-102-02-CR-5-F
NO. 93-102-03-CR-5-F
NO. 93-102-04-CR-5-F
NO. 93-102-05-CR-5-F
NO. 93-102-06-CR-5-F
NO. 93-102-07-CR-5-F
NO. 93-102-08-CR-5-F
NO. 93-102-09-CR-5-F

UNITED STATES OF AMERICA

v.

CLYDE ANDRE HENDRICKS
MELVIN ADAMS
ANTHONY B. HOLLEY
STANLEY LEACH
LENTON EARL JORDAN
FLETCHER JOHNSON
JOHN DOE,
  a/k/a Raleek,
  a/k/a Baldhead
TUVAL MCKOY
LORI ANNE PERRY HENDRICKS

I N D I C T M E N T

The Grand Jury charges that:

## COUNT 1

Beginning in or about January 1992, the exact date being unknown, and continuing up to and including June 17, 1993, within the Eastern District of North Carolina and elsewhere, CLYDE ANDRE HENDRICKS, MELVIN ADAMS, ANTHONY B. HOLLEY, STANLEY LEACH, LENTON EARL JORDAN, FLETCHER JOHNSON, JOHN DOE, a/k/a Raleek, a/k/a Baldhead, TUVAL MCKOY and LORI ANNE PERRY HENDRICKS, the defendants herein, did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together with others known and

unknown to the grand jury, to commit the following offenses against the United States:

1.   To knowingly, intentionally and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2.   To knowingly, intentionally and unlawfully distribute a quantity and mixture of a substance containing a detectable amount of cocaine base, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.   To knowingly, intentionally and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4.   To knowingly, intentionally and unlawfully distribute a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

<u>WAYS, MANNER AND MEANS TO ACCOMPLISH THE CONSPIRACY</u>

The primary purpose of the conspiracy was to make as much money as possible through the distribution of cocaine, cocaine base and firearms, in the Eastern District of North Carolina.  In order to accomplish the goals of the conspiracy the co-conspirators did commit and aid and abet in the commission of the following violations:

a.   possession and receiving firearms which had the manufacturers serial number removed, obliterated and altered and had, at any time, been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Section 922(k);

b.   engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A) and Section 924(a)(1)(D);

c.   using and carrying firearms during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c);

d.   failing to maintain firearm records as required by law, in violation of Title 18, United States Code, Section 922(m);

e.   possession of firearms in and affecting commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Section 922(g);

f.   transferring firearms knowing that they will be used in a drug trafficking crime, in violation of Title 18, United States Code, Section 924(h);

g.   wire fraud, in violation of Title 18, United States Code, Sections 1342 and 2.

h.   possession with intent to distribute cocaine base, in violation of Title 21, United States Code, Section 841(a)(1);

i.   distribution of cocaine base, in violation of Title 21, United States Code, Section 841(a)(1);

3

j. possession with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1); and

k. distribution of cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

The ways, manner and means by which this purpose was carried out included the following:

1. It was part of the conspiracy that the defendants and the unindicted co-conspirators played different roles and took upon themselves different tasks and participated in the affairs of the conspiracy through various criminal acts. The defendants made themselves and their services available at various times throughout the conspiracy and would participate in selective cocaine, cocaine base and firearm distribution ventures on an as needed basis. Some of the roles which the defendants and unindicted co-conspirators assumed and carried out including among others, organizer, supplier, distributor, courier and gun transporter. The main task of FLETCHER JOHNSON was to supply firearms to the conspiracy. CLYDE ANDRE HENDRICKS, MELVIN ADAMS, STANLEY LEACH, TUVAL MCKOY and JOHN DOE, a/k/a Raleek, a/k/a Baldhead, each had drug distribution operations in Raleigh, North Carolina and they acquired the firearms in order to perpetuate the existence of these drug distribution operations. The principal role of LENTON EARL JORDAN was that of a gun runner in that he would transport firearms for the conspiracy to Richmond, Virginia and Washington, D.C. JOHN DOE, a/k/a Raleek, a/k/a Baldhead, was a wholesale distributor of cocaine base and supplied wholesale quantities to CLYDE ANDRE

4

HENDRICKS. At all times material to the conspiracy, LENTON EARL JORDAN was a sworn law enforcement law officer with the North Carolina Central University Police Force and LORI ANNE PERRY HENDRICKS was a sworn law enforcement officer with the Shaw University Police Force.

2. It was further part of the conspiracy that the defendants and unindicted co-conspirators derived substantial money and other benefits from their unlawful activities.

3. It was further part of the conspiracy that the defendants and unindicted co-conspirators solicited, recruited and hired other individuals in the Raleigh, North Carolina area to receive cocaine, cocaine base and firearms.

4. It was further part of the conspiracy that the defendants and unindicted co-conspirators traveled in interstate commerce in order to facilitate the possession with intent to distribute cocaine base and the distribution of cocaine base as well as possession and distribution of firearms.

5. It was further part of the conspiracy that the defendants and unindicted co-conspirators caused to be distributed and distributed in the Eastern District of North Carolina and elsewhere, substantial quantities of cocaine base.

6. It was further part of the conspiracy that the defendants and unindicted co-conspirators did acquire and possess hundreds of firearms with altered and obliterated serial numbers in Raleigh, North Carolina in order to perpetuate their cocaine distribution activities in the Eastern District of North Carolina.

7.   It was further part of the conspiracy that the defendants and unindicted co-conspirators cut and packaged cocaine base in quantities for redistribution and retail sale.

8.   It was further part of the said conspiracy that each defendant would commit and aid and abet in the commission of the criminal offenses involving the knowing and intentional distribution and possession with intent to distribute controlled substance, namely cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

<u>OVERT ACTS</u>

In furtherance of said conspiracy and to effect the objects thereof, the defendants and unindicted co-conspirators committed overt acts in the Eastern District of North Carolina and elsewhere, including but not limited to the following:

1.   Beginning in or about August 1992 and continuing through June 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON who was a licensed firearms dealer, supplied in excess of one thousand two hundred (1,200) handguns to STANLEY LEACH, TUVAL MCKOY, CLYDE ANDRE HENDRICKS, LORI ANNE PERRY HENDRICKS, JOHN DOE, a/k/a Raleek, a/k/a Baldhead and LENTON EARL JORDAN.   JOHNSON failed to make or keep any records of these transactions as required by law.

2.   In or about August 1992, in the Eastern District of North Carolina, FLETCHER JOHNSON introduced STANLEY LEACH to CLYDE ANDRE HENDRICKS in order to enable LEACH to obtain a new source of supply

6

for wholesale quantities of cocaine base. During this conversation, HENDRICKS and LEACH discussed weight and prices of cocaine base and exchanged telephone and pager numbers.

3.   In or about September 1992, in the Eastern District of North Carolina, STANLEY LEACH "cooked" a quantity of cocaine into cocaine base, commonly known as crack, said cocaine base being for further distribution in the Eastern District of North Carolina.

4.   In or about September 1992, in the Eastern District of North Carolina, STANLEY LEACH and FLETCHER JOHNSON did agree to alter the serial numbers of the firearms that they sold in order to make them more difficult to trace.

5.   In or about October 1992, in the Eastern District of North Carolina, TUVAL MCKOY sold numerous handguns to an unindicted co-conspirator.

6.   Beginning in the fall of 1992 and continuing through May 1993, LENTON EARL JORDAN and CLYDE ANDRE HENDRICKS made numerous trips from Raleigh, North Carolina to Washington, D.C. to deliver quantities of 15-20 firearms with altered and obliterated serial numbers to a co-conspirator, said firearms having been delivered to them by FLETCHER JOHNSON.

7.   In or about the fall of 1992 through May of 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, LORI ANNE PERRY HENDRICKS did assist FLETCHER JOHNSON alter and obliterated serial numbers on approximately 20 handguns he was delivering to CLYDE ANDRE HENDRICKS.

8.   On or about November 23, 1992, in the Eastern District of

7

North Carolina, FLETCHER JOHNSON sold four Mac 10 9mm handguns to JOHN DOE, a/k/a Raleek, a/k/a Baldhead.

9.   In or about November 1992, in the Eastern District of North Carolina, TUVAL MCKOY distributed a quantity of cocaine base to an unindicted co-conspirator.

10.   In or about December 1992, in the Eastern District of North Carolina, TUVAL MCKOY sold numerous handguns to an unindicted co-conspirator.

11.   On or about December 18, 1992, in the Eastern District of North Carolina, FLETCHER JOHNSON sold approximately 12 Bryco .380 caliber handguns to JOHN DOE, a/k/a Raleek, a/k/a Baldhead.

12.   In or about January 1993, in the Eastern District of North Carolina, TUVAL MCKOY sold numerous handguns to an unindicted co-conspirator.

13.   In or about January 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, CLYDE ANDRE HENDRICKS distributed approximately one ounce of cocaine to FLETCHER JOHNSON.   The cocaine was offered as payment for a delivery of firearms that had been previously delivered to HENDRICKS.

14.   In or about March/April 1993, in the Eastern District of North Carolina, TUVAL MCKOY sold numerous handguns to an unindicted co-conspirator.

15.   On or about May 1, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON delivered numerous handguns to CLYDE ANDRE HENDRICKS.   All of these firearms had the serial numbers

8

altered and obliterated.

16.  On or about May 1, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON delivered numerous handguns to TUVAL MCKOY.  All of these firearms had the serial numbers altered and obliterated.

17.  On or about May 5, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON delivered numerous handguns to STANLEY LEACH.  All of these firearms had the serial numbers altered and obliterated.

18.  On or about May 5, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON delivered numerous handguns to TUVAL MCKOY.  All of these firearms had the serial numbers altered and obliterated.

19.  On or about May 6, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON delivered numerous handguns to STANLEY LEACH.  All of these firearms had the serial numbers altered and obliterated.

20.  On or about May 7, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON delivered numerous handguns to CLYDE ANDRE HENDRICKS.  All of these firearms had the serial numbers altered and obliterated.

21.  On or about June 3, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, at 7283 Shellburne Drive, CLYDE ANDRE HENDRICKS met with an unindicted co-conspirator. During this conversation, the defendant HENDRICKS ordered 27 Lorcin .380 caliber semi-automatic handguns and three Tec 9mm semi-

automatic handguns.  During this conversation, HENDRICKS provided the unindicted co-conspirator with a sample of cocaine base.

22.  On or about June 5, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, MELVIN ADAMS possessed a quantity of cocaine base, said cocaine being for further distribution within the Eastern District of North Carolina.

23.  On or about June 7, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, MELVIN ADAMS contacted FLETCHER JOHNSON and during the subsequent conversation, ADAMS ordered two (2) .380 caliber semi-automatic handguns.

24.  On or about June 7, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, CLYDE ANDRE HENDRICKS spoke with FLETCHER JOHNSON and during the conversation, agreed to supply him with five ounces of cocaine base.

25.  On or about June 7, 1993, in the Eastern District of North Carolina, FLETCHER JOHNSON and TUVAL MCKOY spoke on the telephone.  During this conversation, TUVAL MCKOY indicated that he was ready to order firearms and he would contact JOHNSON with the amount.

26.  On or about June 9, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, ANTHONY B. HOLLEY and MELVIN ADAMS met with FLETCHER JOHNSON.  During this meeting HOLLEY advised JOHNSON that he wanted to obtain sixty (60) .25 caliber handguns to take to New York to sell.  ADAMS advised FLETCHER JOHNSON that he had eight (8) ounces of cocaine and was contemplating a trade for handguns.  ADAMS and HOLLEY gave JOHNSON

$260.00 for two .380 caliber handguns.

27. On or about June 9, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, FLETCHER JOHNSON and ANTHONY B. HOLLEY spoke on the telephone. During this conversation, HOLLEY inquired as to whether JOHNSON had obtained the guns that he and ADAMS had ordered.

28. On or about June 9, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, FLETCHER JOHNSON and CLYDE ANDRE HENDRICKS met at HENDRICKS' residence. During this meeting, CLYDE ANDRE HENDRICKS gave JOHNSON a quantity of cocaine base, commonly known as crack. CLYDE ANDRE HENDRICKS advised that if JOHNSON needed more he could obtain it later that night. HENDRICKS placed a gun order with JOHNSON and gave him $3,860.00 for the guns.

29. On or about June 10, 1993, in Raleigh, North Carolina, in the Eastern District of North Carolina, CLYDE ANDRE HENDRICKS and LORI ANNE PERRY HENDRICKS did possess with intent to distribute a quantity of cocaine base.

30. On or about June 10, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, STANLEY LEACH distributed a quantity of cocaine base, commonly known as crack, to an unindicted co-conspirator.

31. On or about June 10, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, FLETCHER JOHNSON and MELVIN ADAMS spoke on the telephone. During this conversation ADAMS discussed trading .380 caliber handguns for cocaine base.

11

32.  On or about June 11, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, FLETCHER JOHNSON and MELVIN ADAMS spoke on the telephone.  During this conversation, ADAMS discussed trading .380 caliber and Tec 9mm handguns for cocaine base.

33.  On or about June 11, 1993, in Raleigh, North Carolina, within the Eastern District of North Carolina, CLYDE ANDRE HENDRICKS and LORI ANNE PERRY HENDRICKS possessed with intent to distribute approximately 60 grams of cocaine base, commonly known as crack.

All in violation of Title 21, United States Code, Section 846.

<u>FORFEITURES WITH RESPECT TO COUNT 1</u>

Pursuant to Title 21, United States Code, Section 853(a), the defendants shall forfeit to the United States of America any and all properties constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of a conspiracy and any properties used or intended to be used by the defendants in any manner or part, to commit, or to facilitate the commission of such violation.  These assets include, but are not limited to, the following:

1.  Any and all interest of CLYDE ANDRE HENDRICKS and LORI ANNE PERRY HENDRICKS in a parcel of real estate including residence, appurtenances, and improvements located at 7283 Shellburne Drive, Raleigh, North Carolina.

2.  Any and all interest of FLETCHER JOHNSON in a parcel of real estate including residence, business, appurtenances, and

2-Y

ATTACHMENT --- MOTION TO AMEND

ORDER ALLOWING MOTION

FILED

UNITED STATES DISTRICT COURT SEP · 9 '93
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

DAVID W. DANIEL, CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR.

NO. 93-102-01-CR-5-F
NO. 93-102-02-CR-5-F
NO. 93-102-03-CR-5-F
NO. 93-102-04-CR-5-F
NO. 93-102-05-CR-5-F
NO. 93-102-06-CR-5-F
NO. 93-102-07-CR-5-F
NO. 93-102-08-CR-5-F
NO. 93-102-09-CR-5-F

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :   <u>MOTION TO AMEND INDICTMENT</u> |
| | : |
| CLYDE ANDRE HENDRICKS | : |
| MELVIN ADAMS | : |
| ANTHONY B. HOLLEY | : |
| STANLEY LEACH | : |
| LENTON EARL JORDAN | : |
| FLETCHER JOHNSON | : |
| JOHN DOE, | : |
|   a/k/a Raleek, | : |
|   a/k/a Baldhead | : |
| TUVAL MCKOY | : |
| LORI ANNE PERRY HENDRICKS | : |

The United States of America, by and through the United States
Attorney for the Eastern District of North Carolina, hereby moves
the Court to amend Counts 18 through 78 of the indictment as
follows:

On page 22 of the indictment the statutory citation is
incorrectly cited as a violation of Title 18, United States Code,
Section 1342 and 2.   The correct citation for the wire fraud
offense set forth in Counts 18 through 78 should be Title 18,
United States Code, Sections 1343 and 2.

The error in the citation was inadvertent and correcting the
error will not prejudice the defendants in any way.   Counts 18

4.

through 78 clearly set forth a wire fraud offense and the error in the citation has not misled the defendants.  An indictment may be amended without resubmission to the grand jury where the amendment is a matter of form rather than substance and the change does not prejudice the accused.  <u>Russell v. United States</u>, 369 U.S. 749 (1962).  Amending the statutory miscitation in Counts 18 through 78 is not a substantive change to the indictment.  <u>See United States v. Garner</u>, 529 F.2d 962, 966 (6th Cir. 1976)(if the indictment charges acts that are illegal under an existing statute, then the indictment is not invalidated because it cited the wrong statute).

Federal Rule of Criminal Procedure 7(c)(3) provides that "[e]rror in the citation or its omission shall not be ground for dismissal of the indictment . . . if the error or omission did not mislead the defendant to his prejudice."  The defendants were fully informed of the wire fraud charge contained in Counts 18 through 78 and therefore have not been prejudiced by the erroneous statutory citation.

Based on the foregoing, the United States respectfully requests that page 22 of the indictment be amended to read: "All in violation of Title 18, United States Code, Sections 1343 and 2."

Respectfully submitted, this 8 day of September, 1993.

JAMES R. DEDRICK
United States Attorney


By:   Christine B. Hamilton
Assistant United States Attorney
Criminal Division

## Certificate of Service

This is to certify that I have this 9th day of September, 1993, served a copy of the foregoing Government's Motion to Amend Indictment upon the defendants in this action by depositing a copy of the same in the United States mail in a postpaid envelope addressed as follows:

Christine B. Hamilton
Assistant United States Attorney
310 New Bern Avenue, Suite 800
Raleigh, North Carolina  27601
(919) 856-4530

Joseph B. Cheshire, Jr.
Attorney at Law
P.O. Box 1029
Raleigh, North Carolina  27602
Attorney for Defendant Andre Hendricks

Farris A. Duncan
Attorney at Law
P.O. Box 1004
Goldsboro, North Carolina
Counsel for Defendant Adams

Jack B. Crawley, Jr.
Attorney at Law
4601 Six Forks Road, Suite 500
Raleigh, North Carolina  27609
Counsel for Defendant Holley

William W. Plyler
Attorney at Law
P.O. Box 150
Raleigh, North Carolina  27602
Counsel for Defendant Leach

J. Henry Banks
Attorney at Law
P.O. Box 1482
Henderson, North Carolina  27536
Counsel for Defendant Jordan

Jeffrey L. Starkweather
Attorney at Law
312 West Franklin Street
Chapel Hill, North Carolina  27516
Attorney for Defendant Johnson

Douglas P. Connor
Attorney at Law
P.O. Box 49
Mt. Olive, North Carolina  28365
Counsel for Defendant McKoy

Lewis A. Thompson III
Attorney at Law
P.O. Box 535
Warrenton, North Carolina  27589
Counsel for Defendant Lori Anne Perry Hendricks

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

No. 93-102-01-CR-5-F
No. 93-102-02-CR-5-F
No. 93-103-03-CR-5-F
No. 93-103-04-CR-5-F
No. 93-103-05-CR-5-F
No. 93-103-06-CR-5-F
No. 93-103-07-CR-5-F
No. 93-103-08-CR-5-F
No. 93-103-09-CR-5-F

FILED

SEP 13 1993

DAVID W. DANIEL, CLERK
U. S. DISTRICT COURT
E. DIST. NO. CAR.

UNITED STATES OF AMERICA

        v.

CLYDE ANDRE HENDRICKS
MELVIN ADAMS
ANTHONY B. HOLLEY
STANLEY LEACH
LENTON EARL JORDAN
FLETCHER JOHNSON
JOHN DOE,
    a/k/a Raleek,
    a/k/a Baldhead
TUVAL MCKOY
LORI ANNE PERRY HENDRICKS

)
)
)
)
)
)
)
)
)
)
)
)
)
)

O R D E R

       The Government's motion to amend the Indictment herein

to correct a technical error is ALLOWED.

       SO ORDERED.

       This _10th_ day of September, 1993.

JAMES C. FOX
United States District Judge

lc: USA
Counsel
CR OB #52
Pg #144

1-W

**ATTACHMENT --- JOHN DOE DOCKET SHEET**

CRIMINAL DOCKET U.S. District Court | U.S. | J WRIT | U.S. | INDICTMENT (Inst. copied ( ) ( ) )

VS. | 93- QUSE NO ( )

John Doe a/k/a "Raleek"
a/k/a "Baldhead"

| | |
|---|---|
| PO ☐ 0417 05 | Assigned 1707 |
| Misd ☐ | Disp./Sentence ○ |
| Felony XX District | Judge/Mag dte |

| Mo. | Day | Yr |
|---|---|---|
| 07 | 06 | 93 |

00102

9 No of Def's U.S. MAG CASE NO

**I. CHARGES**

| U.S TITLE SECTION | OFFENSES CHARGED | ORIGINAL COUNTS |
|---|---|---|
| 21:846 | Conspiracy to Possess with Intent to Distribute Cocaine. | Ct. 1 — 1 |
| 18:924(c)&2 | Use of Firearm during a Drug Trafficking Crime. | Ct. 17 — 1 |
| 18:1342 & 2 | Wire Fraud. | Cts.18,37,44 3 |
| 18:922(k) & 924(a)(1)(B) & 2 | Possession and Receiving Firearms which had the Manufacturer's Serial Number Removed, Obliterated, and Altered. | Ct. 95 — 1 |

N.A. 3-8-94    N.A. 12-9-97
4CCA# 94-5213    4CC# 97-7813
Judg 10-3-95    SUSAN WEIgly

SUPERSEDING COUNTS

**II. KEY DATE**

INTERVAL ONE — END ONE AND/OR BEGIN TWO (OR RESTART PERIOD TO TRIAL) — END INTERVAL TWO

| KEY DATE | KEY DATE | KEY DATE | KEY DATE |
|---|---|---|---|
| ☐ arrest ☐ summons ☐ custody ☐ appears w/o complaint | XX Indictment filed/unsealed ☐ consent to Magr trial on complaint ☐ Information ☐ Felony W/waiver | a) ☐ 1st appears on pending charge /R40 b) ☐ Receive file R20/21 c) ☐ Supsdg t , Indt , Inf d) ☐ Order New trial e) ☐ Demand f) ☐ G. P Withdrawn | ☐ Dismissal Pled ☐ guilty ☐ Nolo ☐ Trial (non dir) J/dury |
| EARLIEST OF | 7-6-93 | 1-24-93 | 11-24-93 |
| | APPLICABLE | | APPLICABLE |

| 1st appears with/ waives counsel | ARRAIGNMENT | 1st Trial Ended | RE TRIAL | 2nd Trial Began | DISPOSITION DATE | SENTENCE DATE |
|---|---|---|---|---|---|---|
| | 12 3 93 | 12 3 93 | | | | |

FINAL CHARGES DISMISSED

☐ #1D ☐ on S T ☐ on S T ☐ Nolle ☐ grounds ☐ W.P. ☐ WOP
☐ Pros

**III. MAGISTRATE**

| | DATE | INITIAL/NO. | | INITIAL/NO | OUTCOME: |
|---|---|---|---|---|---|
| Search Warrant | Issued Return | | INITIAL APPEARANCE DATE ▶ | | ☐ DISMISSED |
| Summons | Issued Served | | PRELIMINARY EXAMINATION — OR ☐ REMOVAL HEARING | Date Scheduled ▶ Date Held ▶ | HELD FOR GJ OR OTHER PRO- CEEDING IN THIS DISTRICT |
| Arrest Warrant Issued | | | ☐ WAIVED ☐ NOT WAIVED | Tape Number | HELD FOR GJ OR OTHER PRO- CEEDING IN DISTRICT BELOW |
| COMPLAINT ▶ | | | ☐ INTERVENING INDICTMENT | | |
| Date of Arrest | OFFENSE (In Complaint) | | | | |

**IV. NAMES & ADDRESSES OF ATTORNEYS, SURETIES, ETC.**

Show last names and suffix numbers of other defendants on same indictment/information:

→ 01-Clyde Hendricks, 02-Adams, 03-Holley, 04-Leach, 05-Jordan, 06-Johnson, 07-John Doe, 08-McKoy, 09-Hendricks, Lori

| RULE | | | | |
|---|---|---|---|---|
| 20 | 21 | 40 | In | |

ATTORNEYS
U.S. Attorney or Asst.

Christine Hamilton

Defense: 1 X CJA    2 ☐ Ret.    3 ☐ Waived.    4 ☐ Self.    5 ☐ Non / Other.    6 ☐ PD.    7 ☐ CD

Temp Deten

10-19-93    FPD will appt (Multidueb 10-19-93)
Bridgett Britt Aguirre
P. O. Box 279
Fuquay-Varina, NC 27526
919/552-2266

10/28 - per atty
Robert Cooper
1719 Ramsee St
Fay, NC 28301    919 rur 2843

70 Days Up: 12-3-9

90 Days Up:

Sen: 3/8/94 - Wilm

BAIL ● RELEASE

PRE-INDICTMENT

| | |
|---|---|
| Release Date | |
| Bail ☐ Denied | ☐ Fugit ☐ Pers. ☐ PSA |
| AMOUNT SET $ | Conditions ☐ 10% D |
| Date Set | ☐ Surety |
| ☐ Bail Not Made | ☐ Collate |
| Date Bond Made | ☐ 3rd Pr ☐ Other |

POST-INDICTMENT

| | |
|---|---|
| Date Bail ☐ Denied | ☐ Fugit ☐ Pers. ☐ PSA |
| JNT SET | Conditions ☐ 10% D |
| Date Set | ☐ Surety |
| ☐ Bail Not Made | ☐ Collate |
| Date Bond Made | ☐ 3rd Pr ☐ Other |

APPEALS FEE PAYMENT

| FINE AND RESTITUTION PAYMENTS | | | Docket Entries Begin On Reverse Side | | |
|---|---|---|---|---|---|
| DATE | RECEIPT NUMBER | C.D. NUMBER | DATE | RECEIPT NUMBER | C.D. NUMBER |
| | | | | | |

| DATE |  |  | MASTER DOCKET - MULTIPLE DEFENDANT CASE   PAGE [ ] OF [ ] | VI EXCLUDABLE DELAY | | |
| CMENT NO. | 93-102-07-CR-5-F |  | PROCEEDINGS DOCKET FOR SINGLE DEFENDANT | Start Date / End Date | Lt. Code | Total Days |

V. PROCEEDINGS
John Doe

CASE ASSIGNE TO JUDGES FOX AND DIXON

| -93 | 1 | **INDICTMENT::** cc: USA, USPO, PTS, USM, J. Fox, J. Dixon, counter, calendar file. | |
| -93 | 2 | **MEMORANDUM::** requeting issuance of arrest warrant. Detention is requested and returnable before USMJ | |
| -93 | 3 | **WARRANT FOR ARREST::** issued original and one to USM w/ cc of indictment & cc: warrant to USA, | wsc |
| 93 | 4. | **MOTION TO AMEND INDICTMENT** filed by Govt - lc: J. Fox | vp |
| 3/93 | 5. | **ORDER** - govt's motion to amend the Indictment herein to correct a technical error is ALLOWED **(Fox)** - lc: USA, counsel - USPO, CR OB #5a pg # 144 | vp |
| /93 | -- | I.A. in Ral before USMJ Denson - Recorded - Deft present w/o counsel - Govt moves for deten - Advised of charges, max punish and rights - Deft requested court appted counsel | vp |
|  | 6. | **ORDER OF TEMPORARY DETENTION PENDING HEARING PURSUANT TO BAIL REFORM ACT** - deten hrg is set for 9/27/93 at 3:30 in Ral before USMJ Denson - lc: Denson, USA, USM, PTS, FPD | vp |
|  | 7. | **ORDER** appting court assigned counsel **(Denson)** - lc: USA, PTS, FPD w/file | vp |
| /93 | -- | PRETRIAL SCHEDULING REPORT TO DIXON | vp |
|  | - | **DETENTION HEARING** in Ral before USMJ Denson - Recorded - Deft present w/counsel - Govt presented evidence thru sworn testimony - Deft is detained | vp |
| /93 | 8. | **ORDER OF PRETRIAL DETENTION** - deft has not rebutted the presumptions and accordingly HE IS ORDERED DETAINED **pending** trial **(Denson)** - lc: USA, USM, PTS, Atty Aguirre | vp |
| 7/93 | 9. | **NOTICE OF APPEARANCE** filed by Bridgett Britt Aguirre - lc: USA USM, PTS, USPO, Judge Fox, Judge Dixon | vp |
| 9/93 | 10. | **PRETRIAL SCHEDULING ORDER** - discovery - 10/14/93 motions - 10/25/93 responses - 11/4/93 (Dixon, M/J) lc: USA, MsAquirre and Judge Fox (ent. 9/29/93) | sr |
| 93 | 11 | **ORDER** - continued to 11/22/93 from 10/25 - due to appnt. of counsel in co-deft. -08's case - excludabel u/ 18:3161(h) - no further delays - (Fox, J) Cr. Ob#53, P. 17 lc: USA, USPO, PTS, USM, Ms. Aquirre and M/J Dixon (ent. 10/7/93) | 10/25/93 11/22/93 sr |
| /93 | 12. | **REQUEST FOR DISCVOERY** by Deft. - w/cs. - lc: M/J Dixon | sr |
| /93 | 13. | **MOTION TO WITHDRAW** by Atty. Aquirre w/cs. - lc: Judge Fox w/ prop. order. | 10/19/93 sr |
| '93 | -- | **RETURN ON WARRANT FOR ARREST** - arrest 9/24/93 - Wm. McQueen, ATF | sr |
| 2/93 | 14. | **ORDER** - m/by Ms. Aquirre to w/draw is allowed - FPD to appt. substitutte counsel immediately - so counsl will have 30 days to prepare for trial on 11/22 (Fox,J) Cr. OB#53, P. 105 lc: FPD on 10/21 - lc: Mrs. Aquirre, Dixon, USPO, USA on 10/22 (ent. 10/22/93) | sr |
| .-93 | 15 | **AFFIDAVIT AND MOTION FOR HABEAS CORPUS AD TESTIFICANDUM FOR IRISH ROBERTSON FOSTER w/ ORDER::** (Denson) 5 cc USA, OB. 53 pg. 108 | wsc |

UNITED STATES DISTRICT COURT *z allen Mosley* **2nd**
CRIMINAL DOCKET   *U.S. vs|| DOE, John* a/k/a Raleek, a/k/a "Baldhead"   **F.P.**

AO 256A ⊕

| | | Yr. | Docket No. |

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DE |
|------|-------------------------|---------------------|
| | (Document No.) | (a) | (b) | (c) |
| 11/3/93 | **ISSUED NOTICE TO APPEAR** - set for arrgn & trial on Monday 11/22/93 at 9 A.M. in Wilm. - Crtr.No. 1 - Before Judge Fox - 1c: USA and Mr. cooper | | sr | |
| 11-12-93 | 16. **NOTICE OF APPEARANCE::** by Robert L. Cooper  cc:USA, USPO, PTS, USM, J.FOX & Dixon | wsc | |
| 11-12-93 | 17 **MOTION FOR BILL OF PARTICULARS::** by deft. w/ c.s.  cc: J. Fox | 11-12-93  11-8-93 | |
| 11-12-93 | 18 **MOTION FOR CONTINUANCD::** by deft. w/ c.s.  cc:J.Fox | 11-12-93 | |
| 11-12-93 | 19 **MOTION TO SUPPRESS PRETRIAL IDENTIFICATION AND TO PREVENT IN COURT IDENTIFICATION::** by deft. w/ c.s.  cc:J.Fox | 11-8-93  11-12-93 | |
| 11-12-93 | 20 **REQUEST FOR NOTICE OF GOVERNMETN INTENT TO PRESENT EVIDENCE CONSISTENT W/ RULE 404(b):** w/ c.s.  cc: J. FOX | 11-12-93  11-8-93 | |
| 11-12-93 | 21 **MOTION FOR NOTICE BY THE GOVERNMENT OF INTENTION TO USE EVIDENCE ARGUABLE SUBJECT TO SUPPRESSION AND MEMORANDUM IN SUPPORT THEREOF::** by deft. w/ c.s.  cc: J. Fox | 11-12-93  11-8-93 | |
| 11-12-93 | 22 **MOTION TO COMPEL IMMEDIATE DISCLOSURE OF EXISTENCE OF PROMISES OF IMMUNITY, LENIENCY, OR PREFERENTIAL TREATMENT AND INCORPORATED MEMORANDUM OF LAW.::** by deft. w/ c.s. cc: J.Fox | 11-12-93  11-8-93 | |
| 11-12-93 | 23 **MOTION FOR ADDITIONAL PEREMPTORY CHALLENGES::** by deft. w/ c.s.  cc: J. Fox | 11-12-93 | |
| 11-12-93 | 24 **MOTION TO EXCLUDE WITNESS::** by deft. w/ c.s.  cc: J.Fox | 11-12-93 | |
| 11-12-93 | 25 **MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS:** by deft. w/ c.s.  cc: J.Fox | 11-8-93 | |
| 11-12-93 | 26. **CERTIFICATE OF SERVICE::** for derft. motions filed on 11-12-93. | wsc | |
| 11/16/93 | -- Atty. requested cy of transcript of detention hearing - needs by Friday, 11/19/93 - Tape given to Joyce Todd for transcribing. | sr | |
| 11/17/93 | 27. **EX PARTE MOTIN FOR FUNDS TO HIRE AN INVESTIGATOR** by deft. 1c: Jude Fox - adv. re: CJA 21. | sr | 11/17/93  11-18-93 |
| 11/17/93 | 28 **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PRETRIAL AND IN COURT IDENTIFICATION** w1.cs - 1c: JUdge Fox | sr | |
| | 29. **GOVERNMENT'S RESPOSNE TO DEFENDANT'S PRETRIAL MOTIONS** w/cs 1c: Judge Fox | sr | |
| 11/18/93 | 30. **ORDER** - govern. has respionses to ms. regarding notice, Brady material and sequestration of witnesses - therefore they do not need to be addressed - court will address m/ add. peremptory challenges at trial - m/bill of aprtculars, for continuance and to suppress are denied as untimely, ladking merit - m/to hare an investigator is denied as untimely. (Fox, J) Cr. OB#53, P. 166 - 1c: USA and Mr. Cooper (ent. 11/18/93) | sr | |
| 11/18/93 | -- **TRANSCRIPT** - Detention Hearing - 9/27/93 - Raleigh before Judge Denson - Carol Williams transcribed the Tape. | sr | |
| 11/19/93 | 31. **GOVERNMENT'S PROPOSED JURY INSTRUCTIONS** w/cs. - 1c: judge Fox. | sr | |

B.P.

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET                    DOE, John                              93-102-07-

AO 256A

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY | | | |
|------|-------------------------|:---:|:---:|:---:|:---:|
| | (Document No.) | (a) | (b) | (c) | (d) |
| 11/19/93 | 32. **GOVERNMENT'S MOTION TO AMEND INDICTMENT** - moves to identify Johne Doe as Allen Morsley, a/k/a Raleek, a/k/a Baldhead. w/cs. - lc: Judge Fox. | | sr | | |
| | 33. **GOVERNMENT'S PROPOSED QUESTIONS OF VOIR DIRE w/cs.** lc: Judge Fox | | sr | | |
| 11/22/93 | -- Wilm. - Judge Fox - Talley Taylor Ct. Reporter  Deft. - sworn - Atty moves to w/draw - denied - deft. questioned re: attorney and name - M/Govern. allowed - deft's name is Allen Morsley a/k/a Raleek and Baldhead - Deft. to adv. court by jury selection if he wishes to proceed pro se or w/Mr. Cooper Arraigned - Not guilty - jury selection set for 11/24/93 | | | | |
| | 34. DEFENDANT'S REQUEST FOR VOIR DIRE - lc: Judge Fox | sr | | | |
| | 35. APPLICATION FOR COURT ORDER TO REQUIRE TESTIMONY -  of Ellison Moore - lc: Judge Fox | | | | |
| | 36 ORDER - requiring Ellison Moore to testify. (Fox, J)  Cr. OB#    P.  - lc: USA and Mr. Cooper (ent. 11/22/93) | | | | sr |
| 11/24/93 | -- Wilm. - Judge Fox - James Palmer Ct Reporter  Deft. admitted he is Allen Morsley and will keep Mr. Cooper  as his attorney - Atty m/to withdraw - denied.  J. Selection begin - continued until 11/29/93 to complete  selection of alternates - J.T. to begin on 11/29/93 at  9 A.M. | | | | |
| 11/29/93  * | -- Wilm. - Judge Fox - Talley Taylor Ct. Reporter  J. Selection completed. - Jury impaneled  Evid. began for the Govern. | | | | |
| 11/30/93 | -- Wilm. - Judge Fox - Talley Taylor Ct. Reporter  Evid. cont'd for the Govern. | | | | |
| 12/1/93 | -- Wilm. - Judge Fox - Talley Taylor Ct. Reporter  Evid. cont'd for the Govern. | | | | |
| 12/2/93 | -- Wilm. - Judge Fox - Talley Taylor Ct. Reporter  Evid. cont'd for the Govern. | | | | sr |
| 12/2/93 | 37. **ORDER** returning exhs. to Det. Ray Moss - Raleigh Police Dept.  re:" guns (Fox, J) - lc: USA and Det. Moss. | | sr | | |
| | 38. **ORDER** - returning exhbs to Det. Ray Moss - Raleigh Police Dept.  re: cocaine (Fox,J) - lc: USa and Det. Moss. | | sr | | |
| *11/29/93 | TRANSCRIPT - Vol1 - excerpts of juiry selection before Judge  Fox - 11/24/93 - Wilm. - James PALMER Ct. Reporter | | | | |
| 12/3/93 | -- Wilm. - Judge Fox - Talley Taylor Ct. Reporter  Ev. cont'd for Govern - Govern. rests - R. 29 - denied.  Charge Conference - closing arguments - charge to jury | | | | |
| | 39 **JURY VERDICT** - Guilty to Cts. 1,17,18,37,44,80,81,95  lc: USA,USPO, PTS, USM, Mr. Cooper  In Custody - SEN> 3/7/94 - Wilm. - 9 A.M. | | | | |
| | -- Exh. list in file for co-deft 02 - (1 box w/chart in  exh. room - no exhs. for defts. except two attached  to exh. list for record only - not adm.) | | sr | | |
| | | | sr | | |
| 1/1/94 | **ISSUED NOTICE TO APPEAR** - set for sen. on 3/8/94 at 9 A.M.  in Wilm. before Judge Fox - lc: USA and Mr. Cooper | sr | | | |

3rd F.P

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET   *U. S. vs*   Morsley, Allen            93-102-07-CR

AO 256A ⊕

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DEL |
|------|-------------------------|-------------------|
| | (Document No.) | (a) | (b) | (c) |

| | | | | |
|------|-------------------------|----|----|----|
| 2/18/94 | **TRANSCRIPT - TRIAL -** 11/**19**/93 - Wilm. before Judge Fox - Talley Taylor Ct. Reporter | | | |
| | **TRANSCRIPT -TRIAL -** 11/30/93 - Wilm. before Judge Fox - Talley Taylor Ct. Reporter | | | |
| | **TRANSCRIPT - TRIAL - 12/1/93 - Wilm.** before Judge Fox - Talley taylor Ct. Reporter | | | |
| | **TRANSCRIPT - Trial** 12/2/93 - Wilm. - before Judge Fox - Talley Taylor Ct. Reporter | | | |
| | **TRANSCRIPT - Trial** 12/3/93 - Wilm. - before Judge Fox - Talley Taylor Ct. Reporter | sr | | |
| 2-25-94 | 40. **MOTION TO WITHDRAW::** by deft. w/ c.s.  cc: J. Fox. | 2-25-94  wsc |
| | | 3-1-94 |
| 3/1/94 | 41. **ORDER** - counsel's m/withdraw is denied - (Fox, J) Cr. OB#55, P. 54 - lc: USa and Mr. Cooper  (ent. 3/2/94) | sr | | |
| 3/3/94 | 42. **MOTION TO FILE SENTENCING MEMORANDUM TWO DAYS OUT OF TIME** W/cs - lc: Judge Fox | | sr | |
| 3/3/94 | 43. **SENTENCING MEMORANDUM** w/cs. - lc: Judge Fox | | sr | |
| 3/7/94 | 44. **MOTION FOR ORDER EXTENDING TIME** - for sen date by the deft.  w/cs. - lc: Judge Fox. | sr | 3/7/94 |
| | | | 3/7/94 |
| | 45. **ORDER** - m/ext. time for sen is **DENIED.** (Fox, J) Cr. Ob#55, P. 65 - lc: USA and Mr. Cooper.  (ent. 3/7/94) | sr | | |
| 3/7/94 | 46. **ORDER** - govern's m/to file sen. memo. 2 days out of time is ALLOWED - memorandum to be filed. **(Fox,J) Cr. OB#55, P.68** lc:USA and counsel          (ent. 3/7/94) | sr |
| 3/8/94 | -- Wilm. - Judge Fox - talley Taylor Ct. Reporter  Sentencing  Atty Cooper oral motion to withdraw - allowed  but to participate as standby counsel  for the deft. | |
| | 47. **LETTER** - from deft. to Mr. Cooper - made party of record per atty. | |
| | **PRE-SENTENCE REPORT -** FILED UNDER SEAL | |
| | -- Deft. found in contempt (in open Court) - sentenced immediately  (6 mos. consec.-)all sen. combined in oen judgment | |
| | 48. **JUDGMENT IN A CRIMINAL CASE** (offenses after 11/1/87)  Ct. 1 - Life  Ct. 17 60 mos. impr consec.  Cts.18,37,44,80 & 95 - 60 mos. concur  Contempt - 6 mos. consec.  (Total sen. Life plus 66 mos. consec.)  In Custody  No supervised release imposed  $400.00 special assess. due immed.  $16,800 fine w/o interest - payments to be handled  by BOP  Stm. of Reasons  5 yrs. DOB | |
| | (Fox, J) Cr. OB#55, P. 88 - lc:USPO,PTS,deft., Mr. Cooper, Judge Fox, DOJ, F.Cen., F.Sec., 2c:USA and 3c:USM | sr |
| | Advised of Right to Appeal - Notice of Appeal submitted | sr |

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET    *U. S. vs*    Morsley, Allen    93-102-07-CR-5

AO 256A ⊕    Yr. | Docket No. | Def.

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY | | | |
|------|-------------------------|-----|-----|-----|-----|
| | (Document No.) | (a) | (b) | (c) | (d) |
| 2/18/94 | TRANSCRIPT - TRIAL - 11/19/93 - Wilm. before Judge Fox - Talley Taylor Ct. Reporter | | | | |
| | TRANSCRIPT -TRIAL - 11/30/93 - Wilm. before Judge Fox - Talley Taylor Ct. Reporter | | | | |
| | TRANSCRIPT - TRIAL - 12/1/93 - Wilm. before Judge Fox - Talley taylor Ct. Reporter | | | | |
| | TRANSCRIPT - Trial - 12/2/93 - Wilm. - before Judge Fox - Talley Taylor Ct. Reporter | | | | |
| | TRANSCRIPT - Trial - 12/3/93 - Wilm. - before Judge Fox - Talley Taylor Ct. Reporter | sr | | | |
| 2-25-94 | 40 MOTION TO WITHDRAW:: by deft. w/ c.s.  cc: J. Fox. | 2-25-94 | wsc | | |
| 3/1/94 | 41. ORDER - counsel's m/withdraw is denied - (Fox, J) Cr. OB#55, P. 54 - lc: USa and Mr. Cooper  (ent. 3/2/94) | 3-1-94 sr | | | |
| 3/3/94 | 42 MOTION TO FILE SENTENCING MEMORANDUM TWO DAYS OUT OF TIME W/cs - lc: Judge Fox | | sr | | |
| 3/3/94 | 43 SENTENCING MEMORANDUM w/cs. - lc: Judge Fox | | sr | | |
| 3/7/94 | 44. MOTION FOR ORDER EXTENDING TIME - for sen date by the deft.  w/cs. - lc: Judge Fox. | sr | 3/7/94 | | |
| | 45. ORDER - m/ext. time for sen is DENIED. (Fox, J) Cr. Ob#55, P. 65 - lc: USA and Mr. Cooper.  (ent. 3/7/94) | sr | 3/7/94 | | |
| 3/7/94 | 46 ORDER - govern's m/to file sen. memo. 2 days out of time is ALLOWED - memorandum to be filed. (Fox,J) Cr. OB#55, P.68 lc:USA and counsel  (ent. 3/7/94) | | sr | | |
| (3/8/94) | -- Wilm. - Judge Fox - talley Taylor Ct. Reporter Sentencing Atty Cooper oral motion to withdraw - allowed but to participate as standby counsel for the deft. | | | | |
| | 47. LETTER - from deft. to Mr. Cooper - made party of record per atty. | | | | |
| | PRE-SENTENCE REPORT - FILED UNDER SEAL | | | | |
| | -- Deft. found in contempt (in open Court) - sentenced immediately (6 mos. consec.-)all sen. combined in oen judgment | | | | |
| | 48. JUDGMENT IN A CRIMINAL CASE (offenses after 11/1/87) Ct. 1 - Life Ct. 17 60 mos. impr consec. Cts.18,37,44,80 & 95 - 60 mos. concur Contempt - 6 mos. consec. (Total sen. Life plus 66 mos. consec.) In Custody No supervised release imposed $400.00 special assess. due immed. $16,800 fine w/o interest - payments to be handled by BOP Stm. of Reasons 5 yrs. DOB | | | | |
| | (Fox, J) Cr. OB#55, P. 88 - lc:USPO,PTS,deft., Mr. Cooper, Judge Fox, DOJ, F.Cen., F.Sec., 2c:USA and 3c:USM | sr | | | |
| | Advised of Right to Appeal - Notice of Appeal submitted | sr | | | |

B.P.
3rd

**UNITED STATES DISTRICT COURT**
**CRIMINAL DOCKET**

AO 256A

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY | | | |
|------|--------------------------|:---:|:---:|:---:|:---:|
| | (Document No.) | (a) | (b) | (c) | (d) |
| 3-8-94 | 49. **NOTICE OF APPEAL** by Deft. - 1c 4th Circuit Court of Appeals, 1c Judge Fox, 1c U.S. Atty., Probation, Pre-trial Services Marshal and Mr. Morsley. (ent. 3-11-94) ms | | | | |
| 3-11-94 | APPEAL PACKET MAILED THIS DATE CONSISITING OF docketing statement, transmittal sheet, transcript order form CJA 24 and index. | | | | |
| 3-18-94 | 50. **ORDER** - The court consolidates these cases (94-5203 and 94-5204) for purposes of briefing and oral argument. Bert Montague, Clerk (ent. 3-18-94) ms | | | | |
| 3-21-94 | **TRANSCRIPT OF JURY TRIAL BEFORE THE HONORABLE JAMES C. FOX CHIEF U.S. DISTRICT JUDGE** at Wilmington, N.C.                    Nov. 24, 1993 Volume 1 of 1                           Pages 1 - 50 James Palmer, Court Reporter      (ent. 3-21-94) ms | | | | |
| 3-23-94 | 51. **NOTICE OF APPEAL by DEFT.** - 1c 4th Circuit Court of Appeals, 1c Judge Fox, 1c U.S. Atty., probation, Pre-trial Services, Marshal and Mr. Morsley (etn. 3-24-94) ms | | | | |
| 3-24-94 | APPEAL PACKET MAILED THSI DATE CONSISITNG OF docketing statement, transmittal sheet, and index. | | | | |
| 3/25/93 | Order - from 4th Circuit Court of Appeals - 94-5203 - 93-102 - 94-5204 - 93-102 - Court consolidates these cases for purposes of briefing & oral argument and directs that: 1. one joint brief shall be permitted per side; 2. the parties on each side shall bear the time allowed for oral argument; 3. each side shall notify the Court of the attorney designated as lead counsel within 10 days of the date of this order (Bert M. Montague, Clerk - 4th Circuit Court of Appeals)                     ag | | | | |
| 5-9-94 | **TRANSCRIPT OF ARRAIGNEMTN AND MOITON TO WITH-DRAW AS COUNSEL BEFORE THE HONORABEL JAMES C. FOX, CHIEF U.S. DISTRICT JUDGE** at Wilmington, N.C.                    Nov. 22, 1993 Volume 1 of 1                           Pages 1 - 24 Talley Taylor, Court Reporter. (ent. 5-10-94) ms | | | | |
| 5-9-94 | **TRANSCRIPT OF SENTENCING BEFORE THE HONORABLE JAMES C. FOX CHIEF U.S. DISTRICT JUDGE** at Wilmington, NC..                   March 8, 1994 Volume 1 of 1                           Pages 1 - 42 Talley Taylor, Court Reporter      (ent. 5-10-94) ms | | | | |
| 5-11-94 | **TRANSCRIPT OF JURY TRIAL BEFORE THE HONORABLE JAMES C. FOX, CHEIF U.S. DISTRICT JUDGE** at Wilmington, N.C.                    November 24, 1993 Volume 1                              Pages 1 - 50 James Palmer, Court Reporter       (ent. 5-13-94) ms | | | | |
| 6-16-94 | CERTIFICATE - **Record contains sealed material** - 1c 4th Circuit Court of Appeals, 1c Judge Fox, 1c Counsel of Record. | | | | |
| 8-17-94 | CASE FILE MAILED THIS DATE CONSISTING OF 11 VOLUMES TO U.S. COURT OF APPEALS. | | | | |

4th F.P

**UNITED STATES DISTRICT COURT**
**CRIMINAL DOCKET**   *U. S. vs*

MORSLEY, ALLEN

93-102-07-CR-

AO 256A ⊕

| Yr. | Docket No. |

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DEL |
|------|-------------------------|------------------------------|
| | (Document No.) | (a) | (b) | (c) |
| 09/06/95 | 52 PUBLISHED OPINION - Affirmed in part, vacated in part and remanded by published opinion lc Judge Fox,) ent. 9-6-95) ms | |
| 10/02/95 | 53 JUDGMENT U.S. COURT OF APPEALS - the court affirmed the judgment of the D.Court lc Judge Fox, U.S. Atty., Probation Pre-trial Services and Marshal. (ent. 10/02/95) ms | |
| 04/22/97 | 54 MOTION UNDER 28 USC §2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE - by deft  CIVIL NO. 5:97-CV-303-F gnm | |
| 04/25/97 | 55 PETITIONER ALLEN MORSLEY'S MOTION, REQUESTING A 60 DAY EXTENSION OF TIME, PURSUANT TO RULE 15(a) FED. RULES CIVIL PROCEDURE - w/cs  lcc: Judge Fox               fs | |
| 04/29/97 | Motion submitted to Judge Fox gnm | |
| 05/07/97 | 56 ORDER - petitioner's April 25, 1997, motion for a 60-day extension of time to supplement his §2255 motion is denied (FOX) FOB#.9, p. 209 (ent. 05/07/97) cc: dft                                             gnm | |
| 06/03/97 | 57 ORDER - that this action is dismissed as utterly meritless pursuant to Rule 4, Rules Governing §2255 proceedings (FOX) FOB# 10, p. 54 cc: USA, dft (ent. 06/03/97) gnm | |
| 06/17/97 | 58 ORDER - returning pleading entitled "Memorandum of Law in Support of Petitioner's Motion to supplement Accord" for failure to comply with Local Rules - no original signature (DIXON) FOB# 10, p. 83 cc: dft gnm | |
| 6/24/97 | 59 ORDER - returning the pleading entitled "Motion to make additional findings of fact and to amend the judgment pursuant to Rule 52(b) of the FRCP" for failure to comply with the Local Rules - no original signature (DIXON) FOB#10, p.103 c:served. (e. 6/24/97) anh | |
| 07/07/97 | 60 MOTION TO MAKE ADDITONAL FINDINGS OF FACTS AND TO AMEND THE JUDGMENT PURSUANT TO RULE 52(b) OF FEDERAL FULES OF CIVIL PROCEDURE - by dft  w/cs gnm | |
| 07/07/97 | 61 PETITIONER MORSLEY'S MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO SUPPLEMENT ACCORD. RULE 15(A) FED CIVIL PROC. IN COMPLIANCE WITH PETITIONER'S MOTION UNDER TITLE 28 U.S.C. § 2255 AND ACCOMPANYING REFER- ENDUMS HERE WITH - by dft  w/cs | |
| 07/10/97 | Case file sent to Judge Fox gnm | |
| 07/14/97 | 62 ORDER - denying petitioner's July 7, 1997 Motion to Made Additional Findings of Facts and to Amend to Judgment - (FOX) FOB# 10, p.159 cc: dft, USA (ent. 07/14/97) gnm | |
| 07/31/97 | 63 MOTION TO RECONSIDER - by dft w/cs gnm | |
| 08/25/97 | Motion submitted to Judge Fox gnm | |
| 08/29/97 | 64 ORDER - denying motion to reconsider (FOX) FOB# 11, p. 54 cc: USA, dft (ent. 08/29/97) gnm | |
| 10/06/97 | 65 MOTION TO RECONSIDER - by dft gnm | |
| 10/06/97 | 66 MOTION TO SUPPLEMENT PETITIONER'S §2255 - by dft gnm | |
| 10/06/97 | 67 MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO SUPPLEMENT HIS §2255 MOTION - by dft gnm | |
| 10/09/97 | Case submitted to Judge Fox gnm | |

5- W

ATTACHMENTS --- LAB REPORT

NOV 19 '93  04:53PM US ATTY'S OFF EDNC                                    P.2

North Carolina

# STATE BUREAU OF INVESTIGATION

Department of Justice
RALEIGH

## LABORATORY REPORT

TO: Detective R. G. Moss                    DATE: October 14, 1993
    Raleigh Police Department
    P. O. Box 590                           SBI LAB NO.: R930019223
    Raleigh, N. C. 27602
                                            SBI FILE NO.:

TYPE OF CASE: Controlled Substances Act     AGENCY FILE NO.: 038161

LOCATION: Wake County                       EXAMINED BY: W. C. Stark

SUBJECT: RALEEK (LNU)                       MATERIAL SUBMITTED BY: N. W. Goddard
         TESHOMI RASHIDA CRENSHAW
         JOSEPH EDWARD BOSTIC III           DATE OF OFFENSE: September 23, 1993

                                            DATE SUBMITTED: September 28, 1993

---

ITEMS SUBMITTED:

Item #1:  Plastic bag containing white substance.
Item #2:  Plastic bag containing white substance.
Item #4:  Plastic bag containing white substance.

TYPE ANALYSIS REQUESTED:

Analyze for controlled substances.

RESULTS OF ANALYSIS:

Item #1:  Cocaine - Schedule II.
          Weight of white substance - 38.2 grams.
Item #2:  Cocaine - Schedule II.
          Weight of white substance - 30.7 grams.
Item #4:  Cocaine - Schedule II.
          Weight of white substance - 0.4 gram.

DISPOSITION OF EVIDENCE:

The unconsumed portion of the evidence is being retained for pick-up.

Michael F. Easley, Attorney General of the State of North Carolina, hereby certify that the form identified as:
ch Carolina State Bureau of Investigation, Department of Justice, Laboratory Report is a form approved by me for
purpose stated in G.S. 90-95(g) and approved by me in compliance with the said statute.

---

IES TO:                          | THIS REPORT IS TO BE USED ONLY IN CONNECTION WITH AN OFFICIAL CRIMINAL INVESTIGATION

WCS:pg
                                   James J. Coman, Director

Mr. Colon Willoughby, D. A.      This report represents a true and accurate result of my analysis
SAC R. K. Bulla                  on the item(s) described.

                                   W. C. Stark

FIDENTIAL. This is an official file of the North Carolina State Bureau of Investigation. To make public or reveal

NC US SBI CRIMINAL DB ATTYS OFF EDNC

North Carolina
# STATE BUREAU OF INVESTIGATION

Department of Justice
RALEIGH

## LABORATORY REPORT

TO: Detective R. G. Moss
    Raleigh Police Department
    110 South McDowell Street
    Raleigh, N. C. 27602

DATE: October 20, 1993

SBI LAB NO.: R930019223

SBI FILE NO.:

AGENCY FILE NO.: 038161

TYPE OF CASE: Controlled Substances Act

EXAMINED BY: R. L. Navarro

LOCATION: Wake County

MATERIAL SUBMITTED BY: N. W. Goddard

SUBJECT: RALEEK (LNU)(SUSPECT)
         TESHOMI RASHIDA CRENSHAW (SUSPECT)
         JOSEPH EDWARD BOSTIC (SUSPECT)

DATE OF OFFENSE: September 23, 1993

DATE SUBMITTED: September 28, 1993

ITEMS SUBMITTED:

Item #3:   Two (2) plastic bags.
Item #5:   One (1) brown paper bag.

TYPE EXAMINATION REQUESTED:

Latent print examination and comparison.

RESULTS OF EXAMINATION:

There were no latent prints of value for identification purposes developed on Items #3 and #5.

DISPOSITION OF EVIDENCE:

Items #3 and #5 are being held for pick-up.

RLN/mlp

Michael F. Easley, Attorney General of the State of North Carolina, hereby certify that the form identified as North Carolina State Bureau of Investigation, Department of Justice, Laboratory Report is a form approved by me for the purpose stated in G.S. 90-95(g) and approved by me in compliance with the said statute.

THIS REPORT IS TO BE USED ONLY IN CONNECTION WITH AN OFFICIAL CRIMINAL INVESTIGATION.

FILE TO:

Mr. Colon Willoughby, D. A.

James J. Coman, Director

This report represents a true and accurate result of my analysis on the item(s) described.

R. L. Navarro

**ATTACHMENT---- VERDICT SHEET**

(AO156(Rev.5/85) Verdict

FILED IN OPEN COURT
on 12-3-93
David W. Daniel, Clerk
U. S. District Court
Eastern District of N. C.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA

v.                                          **VERDICT**

                                            CASE NO. 93-102-07-CR-5F

ALLEN MORSLEY
a/k/a Raleek
a/k/a Baldhead

**WE, THE JURY FIND:** the defendant, Allen Morsley, a/k/a Raleek,
                        a/k/a Baldhead,

_Guilty_        _Guilty_____, as to Count 1,

_Guilty_        _Guilty_____, as to Count 17,

_Guilty_        _Guilty_____, as to Count 18,

_Guilty_        _Guilty_____, as to Count 37,

_Guilty_        _Guilty_____, as to Count 44,

_Guilty_        _Guilty_____, as to Count 80,

_Guilty_        _Guilty_____, as to Count 81,

_Guilty_        _Guilty_____, as to Count 95.


_Allen Edwards_
FOREPERSON'S SIGNATURE              _12-3-93_
                                    DATE

1-Y


ATTACHMENT --- FLECHER JOHNSON *

ATTEMPT TO IDENTIFIE PETITIONER.

page # 49-60 .

49

1  Q.   NOW, ABOUT WHEN WAS THIS EXACTLY WHEN YOU HAD THIS

2  CONVERSATION AT STANLEY LEACH'S GARAGE?

3  A.   I WANT TO SAY APPROXIMATELY MARCH OR APRIL OF '92, 1992.

4         MR. COOPER:  OBJECTION, YOUR HONOR, SPECULATION AND

5  CONJECTURE IF HE DOESN'T KNOW.

6         THE COURT:  OBJECTION'S OVERRULED.

7  BY MS. HAMILTON:

8  Q.   NOW, THIS INDIVIDUAL THAT YOU FIRST MET AT STANLEY LEACH'S

9  GARAGE, CAN YOU IDENTIFY THIS INDIVIDUAL YOU CALL RALEEK?

10  A.   YES, MA'AM, I CAN.

11  Q.   COULD YOU PLEASE IDENTIFY HIM --

12         MR. COOPER:  OBJECTION, YOUR HONOR.

13  BY MS. HAMILTON:

14  Q.   -- BY WHERE HE'S SEATED AND DESCRIBE WHAT HE HAS ON?

15         THE COURT:  OBJECTION'S OVERRULED.

16         MR. COOPER:  MAY WE APPROACH, YOUR HONOR?

17         THE COURT:  YES, SIR.

18         (BENCH CONFERENCE ON THE RECORD.)

19         THE COURT:  WHAT'S YOUR OBJECTION?

20         MR. COOPER:  COULD WE HAVE A VOIR DIRE ON THIS WITNESS

21  BEFORE HE GIVES AN IN-COURT IDENTIFICATION?  THIS GENTLEMAN HAS

22  IDENTIFIED MY CLIENT IN JAIL --

23         COURT REPORTER:  I CAN'T HEAR YOU.

24         MR. COOPER:  -- IDENTIFIED MY CLIENT IN JAIL, UNDER

25  IMPROPER CIRCUMSTANCES AND HE'S GIVEN CONFLICTING DESCRIPTIONS

1   OF MY CLIENT.  I DON'T THINK IT WOULD BE PROPER FOR HIM TO GIVE

2   AN IN-COURT IDENTIFICATION.  I THINK A VOIR DIRE UNDER THESE

3   CIRCUMSTANCES MIGHT BE HELPFUL TO THE COURT.

4            MS. HAMILTON:  THIS HAS ALREADY BEEN THE SUBJECT OF A

5   MOTION WHICH HAS BEEN DENIED.  I DON'T KNOW WHERE HE GETS THE

6   INFORMATION THAT THERE'S CONFLICTING DESCRIPTIONS GIVEN OF THE

7   DEFENDANT.

8            MR. COOPER:  HE SAID RALEEK WAS STOUT; MY DEFENDANT'S

9   ANYTHING BUT STOUT.

10           THE COURT:  WELL, YOU CAN CROSS-EXAMINE HIM ON THE

11  ISSUE.  OBJECTION'S OVERRULED.

12           (END OF BENCH CONFERENCE.)

13  BY MS. HAMILTON:

14  Q.   WOULD YOU PLEASE IDENTIFY MR. RALEEK BY WHERE HE'S SEATED?

15  A.   YES, HE'S THE THIRD GENTLEMAN FROM MY RIGHT.

16           MR. COOPER:  OBJECTION, MOTION TO STRIKE.

17  BY MS. HAMILTON:

18  Q.   COULD YOU PLEASE TELL THE COURT WHAT COLOR SHIRT HE HAS ON?

19  A.   I WANT TO SAY A PURPLE SHIRT, TO ME IT LOOKS LIKE PURPLE,

20  BUT IT COULD BE PINKISH.

21  Q.   OKAY, STARTING FROM --

22           THE COURT:  THE OBJECTION IS SUSTAINED.  THE JURY WILL

23  DISREGARD THE IDENTIFICATION OF THIS WITNESS.  GO FORWARD,

24  PLEASE.

25           (BENCH CONFERENCE ON THE RECORD.)

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

1      THE COURT:  IT'S PRETTY OBVIOUS TO ME HE DOESN'T KNOW

2  WHAT HE'S TALKING ABOUT.

3      MS. HAMILTON:  YOUR HONOR, THERE'S NO ONE THERE IN A

4  PURPLE SHIRT.

5      THE COURT:  THERE SURE ISN'T.

6      MS. HAMILTON:  I'M THINKING MAYBE WITH THE LIGHTING

7  HE'S SEEING SOME DIFFERENT COLORS.  COULD WE HAVE HIM COUNT?

8      MR. COOPER:  YOUR HONOR, I ASKED FOR A VOIR DIRE.  I

9  MEAN, WHITE AND PURPLE IS A BIG DISTINCTION.

10      (END OF BENCH CONFERENCE.)

11      THE COURT:  MEMBERS OF THE JURY, WOULD YOU STEP TO THE

12  JURY ROOM, PLEASE.  WE'LL BRING YOU BACK IN JUST A FEW MOMENTS.

13      (THE FOLLOWING PROCEEDINGS WERE HELD IN THE ABSENCE OF

14  THE JURY AND ALTERNATES.)

15      (BENCH CONFERENCE ON THE RECORD.)

16      THE COURT:  WHAT'S WRONG WITH THE MAN?

17      MS. HAMILTON:  YOUR HONOR, THERE'S NOTHING WRONG WITH

18  THE MAN.  I MEAN, WITH THE LIGHTING AND EVERYTHING, I DON'T KNOW

19  IF HE'S KIND OF COLOR BLIND.

20      THE COURT:  THIS LIGHTING IS PERFECTLY NORMAL AND

21  PERFECTLY ADEQUATE.

22      MS. HAMILTON:  WELL, I MEAN, I CAN TELL YOU THAT HE'S

23  IDENTIFIED HIM NUMEROUS TIMES.

24      THE COURT:  (PAUSE.)  ALL RIGHT, GENTLEMEN, IF YOU'LL

25  STEP DOWN.

52

1          (END OF BENCH CONFERENCE.)

2          THE COURT:  MR. JOHNSON, HOW MANY TIMES HAVE YOU SEEN

3   THE GENTLEMAN YOU CALL RALEEK?

4          THE WITNESS:  THE WHOLE TIME SINCE I'VE KNOWN MR. ROY

5   LEE I'VE SEEN HIM AROUND ABOUT APPROXIMATELY ABOUT SIX TIMES.

6          THE COURT:  DO YOU KNOW HIM WHEN YOU SEE HIM?

7          THE WITNESS:  YES, SIR, I DO.

8          THE COURT:  HOW MANY TIMES HAVE YOU TALKED TO HIM?

9          THE WITNESS:  APPROXIMATELY ABOUT EIGHT OR TEN TIMES.

10         THE COURT:  DO YOU HAVE THE ABILITY TO IDENTIFY HIM IN

11  THIS COURTROOM?

12         THE WITNESS:  YES, SIR, I DO.

13         THE COURT:  WHO DO YOU THINK HAS GOT THE PURPLE SHIRT

14  ON?

15         THE WITNESS:  DUE TO THE FACT, YOUR HONOR, THAT THE

16  COLOR OF THE LIGHT IS COMING OFF THE FLOOR REFLECTED PURPLE, TO

17  ME.  BUT IT IS THE THIRD GENTLEMAN TO MY RIGHT ON THE END OF THE

18  TABLE THERE, SIR.

19         THE COURT:  YOU WALK OVER TO HIM AND POINT HIM OUT TO

20  ME.

21         THE WITNESS:  THIS GENTLEMAN RIGHT HERE, SIR.

22         THE COURT:  ALL RIGHT, COME BACK AND SIT DOWN.  THE

23  RECORD WILL REFLECT HE WALKED IMMEDIATELY TO MR. MORSLEY AND

24  POINTED TO HIM.  DID YOU WANT TO ASK HIM ANY QUESTIONS, MR.

25  COOPER?

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

53

1          MR. COOPER:  YES, SIR, YOUR HONOR.

2          THE COURT:  ALL RIGHT, GO AHEAD.

3          V O I R   D I R E   E X A M I N A T I O N

4    BY MR. COOPER:

5    Q.   MR. JOHNSON, DO YOU REMEMBER GIVING INTERVIEWS TO AGENT

6    MICHAEL FANELLY ON MAY 27TH, 1993?

7    A.   I DIDN'T HEAR YOU.

8    Q.   DO YOU RECALL GIVING INTERVIEWS TO AGENT MICHAEL FANELLY,

9    OR FINELLI, I'M NOT SURE HOW TO PRONOUNCE HIS NAME.

10   A.   FINELLI, OR MIKE FANELLY.

11   Q.   OKAY, MR. FANELLY.  ON MAY 27TH, 1993.

12   A.   YES.

13   Q.   AND THEN THAT OCCASION, DID YOU MENTION THE NAME OF RALEEK?

14   A.   POSSIBILITY I HAVE.

15   Q.   WELL, IF YOU HAD, DO YOU BELIEVE MR. FANELLY WOULD HAVE

16   INCLUDED IT IN HIS REPORT?

17          MS. HAMILTON:  OBJECTION, YOUR HONOR.

18          THE COURT:  OBJECTION'S SUSTAINED.

19          MR. COOPER:  ALL RIGHT.  MAY I PROCEED FURTHER, YOUR

20   HONOR?

21   BY MR. COOPER:

22   Q.   DO YOU RECALL IN CONNECTION WITH THIS CASE MAKING A SERIES

23   OF PHONE CALLS THAT WERE TAPED, TO MR. HENDRICKS AND -- WELL, IN

24   PARTICULAR, TO MR. HENDRICKS.  DO YOU RECALL THAT?

25   A.   YES, SIR, I HAVE.

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

54

1   Q.   AND DO YOU RECALL ASKING ABOUT ROY LEE?

2   A.   THERE WAS -- I VISITED MR. HENDRICKS TO HIS HOME THAT DAY.

3   Q.   WAS THAT BEFORE OR AFTER THE PHONE CALL?

4   A.   WE HAD SEVERAL PHONE CALLS, SIR.

5   Q.   OKAY, IN PARTICULAR, ONE ON JUNE 10TH, 1993.  DO YOU RECALL

6   THAT PHONE CALL?

7   A.   CAN I ASK WHAT THE PHONE CALL WAS PERTAINED?

8   Q.   WELL, ONE OF THE QUESTIONS THAT YOU ASKED WAS WHO ROY LEE

9   WAS?

10   A.   YES, BECAUSE I WASN'T CORRECT PRONOUNCING HIS NAME AT THE

11   TIME TO MR. HENDRICKS.  HE DIDN'T UNDERSTAND THE PRONUNCIATION

12   THAT I WAS GIVING HIM FOR HIS NAME.

13   Q.   WELL,  IS  THAT  BECAUSE  HE  DIDN'T  UNDERSTAND  YOUR

14   PRONUNCIATION OR IS THAT BECAUSE HE DIDN'T KNOW WHO YOU WERE

15   TALKING --

16   A.   HE DIDN'T UNDERSTAND MY PRONUNCIATIONS.

17   Q.   WOULD IT HELP REFRESH YOUR RECOLLECTION IF I SHOWED YOU A

18   COPY OF THE TRANSCRIPT OF THAT CONVERSATION BETWEEN YOURSELF AND

19   MR. HENDRICKS?

20   A.   YES, DUE TO THE FACT THAT MR. HENDRICKS WAS UPSTAIRS AT THE

21   TIME, I WAS DOWNSTAIRS AT THE TIME, HE PROBABLY COULD NOT HEAR

22   ME ALSO, TO UNDERSTAND MY PRONUNCIATION.

23           MR. COOPER:  YOUR HONOR, BEAR WITH ME JUST A MOMENT.

24           THE COURT:  SURELY.  (PAUSE.)

25   BY MR. COOPER:

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

55

1    Q.   WELL, ISN'T IT TRUE THAT WHEN YOU FIRST ASKED ANDRE ABOUT

2    ROY LEE, HE ASKED YOU "WHO'S THAT?"

3    A.   YES.

4    Q.   AND DIDN'T HE TELL YOU THAT HE DIDN'T KNOW NO ROY LEE?

5    A.   I'M NOT SURE IF HE DID THAT, BECAUSE LIKE I SAID --

6    Q.   DIDN'T YOU THEN TRY TO COME BACK AND TALK ABOUT BALDHEAD?

7    A.   YES.

8    Q.   AND HE SAID HE DIDN'T KNOW WHO THAT WAS EITHER?

9    A.   NO.

10   Q.   YOU DON'T RECALL THAT CONVERSATION?

11   A.   I RECALL THE CONVERSATION, SIR.

12   Q.   AND YOU TRIED FOUR OR FIVE TIMES TO IDENTIFY WHO ROY LEE

13   WAS, AND ANDRE DIDN'T KNOW WHO YOU WERE TALKING ABOUT?

14   A.   YES, IN THE PAST, SIR, MR. HENDRICKS AND MYSELF HAD

15   CONVERSATIONS ABOUT MR. ROY LEE, BECAUSE THEY KNEW ONE ANOTHER.

16   Q.   BUT ROY LEE OR RALEEK?

17   A.   ROY LEE -- I PRONOUNCED IT AS ROY LEE.  THAT'S THE REASON

18   WHY MR. LEACH AND MYSELF JUST ACKNOWLEDGED HIM AS BEING BALDHEAD

19   BETWEEN OURSELVES, BUT WE KNEW WHO WE WERE SPEAKING OF.

20   Q.   SO YOU AND MR. HENDRICKS KNEW WHO BALDHEAD WAS?

21   A.   MR. LEACH.

22          THE COURT:  WHAT DOES THIS HAVE TO DO WITH HIS ABILITY

23   TO OBSERVE AND KNOW THIS MAN IF HE SEES HIM?  WHAT HAS THIS GOT

24   TO DO WITH HIS ABILITY TO MAKE HIS IDENTIFICATION?

25          MR. COOPER:  MY POINT BEING THAT DURING THIS TIME

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

56

1  FRAME YOU HAD ALSO BEEN TALKING WITH DETECTIVES AS WELL, HADN'T

2  YOU?

3          THE WITNESS:  YES.

4  BY MR. COOPER:

5  Q.    AND THEY WERE ASKING YOU ABOUT THIS GUN NAMED RALEEK,

6  WEREN'T THEY?

7  A.    YES, THEY WAS.

8  Q.    AND THEY WANTED TO KNOW WHO RALEEK WAS, DIDN'T THEY?

9  A.    YES.

10 Q.    AND THEY DIDN'T KNOW WHO ROY LEE WAS, DID THEY?

11 A.    NO, THEY DIDN'T.

12 Q.    THEY WERE ASKING YOU IF RALEEK AND ROY LEE COULD BE THE

13 SAME PERSON, WEREN'T THEY?

14 A.    TO THEM, MY PRONUNCIATION OF MR. ROY LEE DIDN'T SOUND RIGHT

15 TO THEM.

16 Q.    ALL RIGHT, NOW LET'S GO TO SEPTEMBER 23RD OF THIS YEAR.

17 DID YOU HAVE AN OPPORTUNITY TO GO TO THE RALEIGH POLICE STATION

18 ON THAT DAY?

19 A.    YES.

20 Q.    AND WHAT TIME OF DAY WAS IT?

21 A.    IT WAS AT NIGHT, I WANT TO SAY ABOUT APPROXIMATELY -- I

22 RECEIVED A PHONE CALL I'D SAY ABOUT BETWEEN THE HOURS OF 9:00

23 P.M. AND BETWEEN THE HOURS OF 11 O'CLOCK, P.M.

24 Q.    OKAY.  NOW, BEFORE THIS, YOU HAD BEEN TALKING WITH THE

25 POLICE AGENTS AS TO THE PROGRESS OF THIS CASE, HAD YOU NOT?

FORM LASER BOND A PENGAD/NOY 1 800 631 6989

00182

57

1   A.    YES.

2   Q.    AND YOU KNEW THAT EVERYBODY HAD BEEN ARRESTED EXCEPT FOR

3  THIS GENTLEMAN BY THE NAME OF RALEEK; ISN'T THAT TRUE?

4   A.    CORRECT.

5   Q.    AND WHO CALLED YOU AT NINE O'CLOCK ON THE 23RD?

6   A.    I GOT A PAGE FROM OFFICER, MR. RAY MOSS.

7   Q.    AND WHAT DID HE SAY WHEN HE PAGED YOU?

8   A.    HE ASKED ME HE WANTED ME TO COME DOWN TO IDENTIFY BECAUSE

9  HE THINK HE GOT THE GENTLEMAN, ROY LEE.

10  Q.    OKAY. AND WHEN YOU GOT TO THE POLICE STATION, WHO ELSE WAS

11  THERE?

12  A.    OFFICER MIKE FANELLY AND MR. MOSS.

13  Q.    AND DID THEY SAY ANYTHING TO YOU AT THAT TIME?

14  A.    THEY ASKED ME IS THIS THE GENTLEMAN NAMED RALEEK.

15  Q.    NOW, WHEN THEY ASKED YOU THAT, WHAT WERE YOU LOOKING AT?

16  A.    I WAS LOOKING THROUGH A GLASS WITH A ROOM ON THE OTHER SIDE

17  WITH A GENTLEMAN.

18  Q.    WAS THERE ANYBODY ELSE IN THAT ROOM? WHO ALL WAS IN THAT

19  ROOM?

20  A.    IN THE ROOM WHERE I IDENTIFIED MR. RALEEK?

21  Q.    WHERE YOU IDENTIFIED THE GENTLEMAN THAT WAS IN THAT ROOM.

22  A.    OKAY, THE GENTLEMAN THAT WAS SUPPOSED TO BE MR. RALEEK.

23  Q.    THE GENTLEMAN THAT WAS SUPPOSED TO BE RALEEK?

24  A.    WITH THAT GENTLEMAN THAT I WAS SUPPOSED TO BE IDENTIFYING,

25  IS THAT WHAT YOU'RE ASKING ME?

58

1  Q.   WHO ALL WAS IN THAT ROOM?

2  A.   I'M NOT SURE WHO ALL ELSE WAS IN THAT ROOM.

3  Q.   WAS THERE MORE THAN ONE PERSON IN THAT ROOM?

4           THE COURT:  LET HIM FINISH, COUNSEL.

5           THE WITNESS:  I'M SURE THERE WAS MORE THAN ONE OR TWO

6  IN THAT ROOM.

7           THE COURT:  SO THERE WAS NO MORE THAN TWO?

8           THE WITNESS:  I'M NOT SURE.  OFFICER MOSS WENT INSIDE.

9  BY MR. COOPER:

10  Q.   SO, ISN'T IT A FACT THAT THERE WERE ONLY TWO PEOPLE IN THAT

11  ROOM, OFFICER MOSS AND ANOTHER BLACK GENTLEMAN?

12  A.   IT COULD HAVE BEEN ONE --

13  Q.   (INTERPOSING)  NOW, WHEN YOU FIRST DESCRIBED ROY LEE TO THE

14  POLICE OFFICERS, WHAT KIND OF DESCRIPTION DID YOU GIVE?

15  A.   I GAVE HIM A SHORT MALE, ABOUT -- ABOUT MY HEIGHT, JUST A

16  LITTLE SHORTER, LOW-CUT HAIR.  WE CALLED HIM BALDHEAD.

17  Q.   DID YOU SAY WHETHER HE WAS FAT, SKINNY?

18  A.   WELL, HE LOOKED -- I'M A LITTLE -- I CONSIDER MYSELF A

19  LITTLE FRAMED GENTLEMAN.

20  Q.   WELL, IN FACT, DIDN'T YOU CALL HIM STOUT?

21  A.   POSSIBILITY.

22  Q.   OKAY.  NOW, HOW TALL ARE YOU?

23  A.   I'M 5'9", SIR.

24  Q.   5'9".  SO YOU SAY HE'S JUST A LITTLE BIT SHORTER THAN YOU?

25  A.   YES.

FORM LASER BOND A PENGAD/INDY 1 800/631-6989

59

1    Q.   OKAY.   WOULD YOU STAND FOR ME, PLEASE?

2    A.   YOU WANT ME TO GET DOWN ON THE BOTTOM.

3    Q.   WELL, YES, THAT WOULD BE HELPFUL.   (WITNESS COMPLIES.)

4    OKAY, THANK YOU.   YOU CAN GO BACK UP.   NOW, WHEN YOU SAY JUST A

5    LITTLE SHORTER, YOU DON'T MEAN MORE THAN TWO INCHES, DO YOU?

6    A.   POSSIBILITY.

7         THE COURT:   MR. COOPER, OUR RULES ARE YOU CONDUCT YOUR

8    EXAMINATION SITTING DOWN.

9         MR. COOPER:   OKAY.   I'M SORRY.

10        THE COURT:   THAT'S ALL RIGHT.

11   BY MR. COOPER:

12   Q.   EARLIER, NOW ISN'T IT TRUE THAT IN YOUR INITIAL STATEMENT

13   TO AGENT FANELLY, YOU HAD ONLY SAID THAT ROY LEE HAD ONLY BOUGHT

14   TWO OR THREE TIMES?

15   A.   FROM ME, THAT HE HAD BOUGHT PERSONALLY FROM ME, TWO OR

16   THREE TIMES.

17   Q.   OKAY.   WELL, ISN'T IT TRUE, YOU JUST TESTIFIED A MOMENT

18   AGO, THAT YOU HAD RALEEK'S PAGER NUMBER, IF ROY LEEK WAS RALEEK,

19   WHY DIDN'T YOU GIVE HIM A CALL WHEN THE AGENTS CONTACTED YOU AS

20   YOU DID EVERYBODY ELSE?

21   A.   SIR, I TRIED.

22        THE COURT:   ALL RIGHT.   I'M GOING -- I THINK I

23   UNDERSTAND THE SITUATION.   DO YOU WANT TO ASK ANY QUESTIONS OF

24   THIS MAN, MS. HAMILTON?

25        MS. HAMILTON:   JUST TO CONTINUE IN FRONT OF THE JURY

1    WITH MY DIRECT.  I HAVE NOTHING ON THIS LINE OF QUESTIONING.

2            THE COURT:  ANYTHING FURTHER IN CONJUNCTION WITH HIS

3    ABILITY TO IDENTIFY HIM?

4            MR. COOPER:  NO FURTHER QUESTIONS, YOUR HONOR.  IF I

5    MIGHT BE HEARD AS TO ARGUMENT.  I THINK THAT CIRCUMSTANCES ARE

6    CLEARLY THAT HE THOUGHT HE WAS DEALING WITH A ROY LEE, AND BASED

7    ON HIS CONVERSATIONS WITH THE POLICE OFFICERS, THEN HE CONVERTED

8    THAT INTO RALEEK, AND HE CARRIED THAT ON WITH HENDRICKS.

9            THE COURT:  WELL, I THINK HE MAY BE CONFUSED ABOUT THE

10   PRONUNCIATION OF THE MAN'S NAME, BUT HE'S TESTIFIED HE DEALT

11   WITH HIM OR SAW HIM AT LEAST ON SIX OCCASIONS, AS I UNDERSTOOD

12   IT.  HE TALKED WITH HIM AS MANY AS TEN, AND HE WALKED DIRECTLY

13   TO HIM IN THIS COURTROOM REGARDLESS OF THE SITUATION WHERE YOU

14   HAVE PREVIOUS -- OR A QUESTIONABLE LINE-UP SITUATION.  I'M GOING

15   TO OVERRULE YOUR OBJECTION, MR. COOPER.  WE'LL CONTINUE IN A FEW

16   MOMENTS.  WE'LL TAKE A RECESS UNTIL 10:40.

17           (RECESS FROM 10:31 A.M., UNTIL 10:40 A.M.)

18           (THE FOLLOWING PROCEEDINGS WERE HELD IN THE PRESENCE

19   OF THE JURY AND ALTERNATES.)

20           THE COURT:  PLEASE BE SEATED AND WE'LL CONTINUE.

21           MS. HAMILTON:  YOUR HONOR, MAY WE APPROACH?

22           THE COURT:  YES, MA'AM.

23           (BENCH CONFERENCE ON THE RECORD.)

24           MS. HAMILTON:  YOUR HONOR, I WOULD LIKE TO ASK AT THIS

25   TIME THAT THE COURT INDICATE THAT THE DEFENDANT, RALEEK, WAS

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

2- W

ATTACHMENTS--- CODEFENDANTS SHIRT COLORS

BEING POINTED OUT THROUGH OUT THE TRIAL

619-620 ,   564 ,   583 ,  623 .

619

1   YOUR SIGNATURE?

2   A.    YES.

3   Q.    AND YOU PAID FOR THAT RENTAL CAR?

4   A.    YES.

5   Q.    AND THAT INCLUDES THE MILEAGE TO NEW YORK AND BACK AGAIN?

6   A.    WELL, THE MILEAGE, IT WASN'T A CHARGE FOR MILEAGE.

7   Q.    SO, THAT MILEAGE WAS INCLUDED IN IT?

8   A.    YES.

9   Q.    SO, THEY RECORDED THE MILEAGE, BUT YOU DIDN'T GET CHARGED

10  EXTRA FOR THAT?

11  A.    THE MILEAGE WAS FREE BECAUSE IT WAS A WEEKLY RENTAL.

12            THE COURT:  YOU'LL HAVE TO SPEAK UP.

13            THE WITNESS:  THE MILEAGE WAS FREE BECAUSE IT WAS A

14  WEEKLY RENTAL.

15            THE COURT:  ALL RIGHT.

16            MS. HAMILTON:  YOUR HONOR, AT THIS TIME I WOULD MOVE

17  GOVERNMENT EXHIBIT 300 INTO EVIDENCE.

18            THE COURT:  IT'S ADMITTED.

19                        (GOVERNMENT EXHIBIT NUMBER 300 WAS

20                         OFFERED AND ADMITTED INTO EVIDENCE.)

21  BY MS. HAMILTON:

22  Q.    DO YOU SEE YOUR NEPHEW IN THE COURTROOM, MR. MONTAGUE?

23  A.    YES.

24  Q.    WOULD YOU TELL THE JURY WHERE HE IS SEATED?

25  A.    OVER THERE BESIDE -- I GUESS THAT'S HIS ATTORNEY.

00932

620

1    Q.    DO YOU KNOW WHAT COLOR SHIRT HE HAS ON?

2    A.    I DON'T KNOW IF THAT'S A SHIRT OR JACKET.

3    Q.    CAN YOU SAY WHAT COLOR THE TOP PART OF HIS --

4          MS. HAMILTON:  IF THE RECORD COULD REFLECT HE'S

5    IDENTIFIED THE DEFENDANT, TUVAL MCKOY.

6          THE COURT:  WHAT COLOR SHIRT -- JACKET DOES HE HAVE

7    ON?

8          THE WITNESS:  I DON'T -- I DON'T KNOW WHAT THE

9    PROPER COLOR FOR THAT IS.  A BROWN -- A BROWNISH-ORANGE.

10         THE COURT:  CAN YOU COUNT BEGINNING WITH THE FIRST

11   GENTLEMAN AT THAT TABLE AND STOP WHEN YOU REACH MR. MCKOY.

12         THE WITNESS:  IT'S HIM STANDING UP.

13         THE COURT:  ALL RIGHT, THANK YOU.  THE RECORD MAY

14   REFLECT HE IDENTIFIED MR. MCKOY.

15         MS. HAMILTON:  I HAVE NOTHING FURTHER OF THIS

16   WITNESS, YOUR HONOR.

17         THE COURT:  MR. DUNCAN?

18   MR. DUNCAN:  NO QUESTIONS.

19         THE COURT:  MR. COOPER?

20   MR. COOPER:  NO QUESTIONS, YOUR HONOR.

21   THE COURT:  MR. DAVIS?

22   MR. DAVIS:  NO QUESTIONS.

23         THE COURT:  YOU MAY STEP DOWN.  THANK YOU.

24         MS. HAMILTON:  MAY THE WITNESS BE EXCUSED, YOUR

25   HONOR?

FORM LASER BOND A PENGAD/INDY 1-800-631-6989

00933

564

1   PERSON IN THE COURTROOM?

2   A.   YES; I DO.

3   Q.   WOULD YOU PLEASE IDENTIFY HIM BY WHERE HE'S SEATED.

4   A.   THE GENTLEMAN WITH THE RED-COLORED SHIRT.

5        MS. HAMILTON:   YOUR HONOR, IF THE RECORD COULD

6   REFLECT HE'S IDENTIFIED THE DEFENDANT.

7        THE COURT:   YES, MA'AM.

8   BY MS. HAMILTON:

9   Q.   NOW, PRIOR TO YOU BEING ARRESTED IN NORTH CAROLINA ON

10  DRUG AND GUN CHARGES, HAVE YOU EVER BEEN ARRESTED BEFORE?

11  A.   YES; I HAVE.

12  Q.   HAVE YOU EVER BEEN CONVICTED OF ANY CRIMES BEFORE THAT?

13  A.   YES.

14  Q.   WHAT WAS THAT?

15  A.   I HAD A PREVIOUS DRUG CHARGE IN NORTH CAROLINA IN 1989.

16        MS. HAMILTON:   I HAVE NOTHING FURTHER OF THIS

17  WITNESS, YOUR HONOR.

18        THE COURT:   MR. DUNCAN.

19        MR. DUNCAN:   NO QUESTIONS.

20        THE COURT:   MR. COOPER.

21        MR. COOPER:   NO QUESTIONS.

22        THE COURT:   MR. DAVIS.

23        C R O S S - E X A M I N A T I O N   10:07 A.M.

24  BY MR. DAVIS:

25  Q.   MR. DAVIS, WERE YOU BORN IN THE STATE OF NEW YORK?

Excerpt - 11

593

1   BRING IT OUT WITH YOUR OFFICER OR YOU CAN ATTEMPT TO REFRESH

2   HER RECOLLECTION WITH HER GRAND JURY TESTIMONY, OR YOU CAN

3   INTRODUCE IT.

4           MR. DAVIS:  WE'RE ENTITLED TO HER STATEMENT THAT SHE

5   GAVE TO THE AGENT IN REFERENCE TO THIS.

6           THE COURT:  IF IT'S JENCKS MATERIAL.

7           MR. DAVIS:  THAT'S WHAT I'M THINKING IT IS, BECAUSE

8   SHE GAVE A STATEMENT--

9           MS. HAMILTON:  YOU HAVE HER JENCKS MATERIAL, THE

10  GRAND JURY TRANSCRIPT.

11          MR. DAVIS:  THAT'S THE ONLY THING?

12          MS. HAMILTON:  THAT'S THE ONLY THING SHE'S SIGNED,

13  SEEN OR ADOPTED.

14          (BENCH CONFERENCE CONCLUDED.)

15  BY MS. HAMILTON:

16  Q.   MS. FOSTER, THE PERSON YOU KNOW AS TUVAL, DO YOU SEE THAT

17  PERSON IN THE COURTROOM?

18  A.   YES.

19  Q.   PLEASE TELL THE JURY WHERE HE'S SEATED.

20  A.   RIGHT DOWN THERE.

21  Q.   YOU HAVE TO IDENTIFY HIM, MS. FOSTER.

22  A.   HE HAS ON A RED SHIRT AND SOME BLUEJEANS.

23          MS. HAMILTON:  IF THE COULD REFLECT SHE'S IDENTIFIED

24  THE DEFENDANT, YOUR HONOR.

25          THE COURT:  YES, MA'AM.

1    A.   YES, MA'AM.

2    Q.   COULD YOU PLEASE IDENTIFY THAT PERSON?

3    A.   TUVAL, RIGHT THERE IN THE RED SHIRT.

4         MS. HAMILTON:  IF THE RECORD COULD REFLECT HE'S

5    IDENTIFIED THE DEFENDANT, TUVAL MCKOY.

6         THE COURT:  YES, MA'AM.

7    BY MS. HAMILTON:

8    Q.   MR. MCLEAN, WOULD YOU PLEASE TELL THE JURY ABOUT THAT?

9    A.   YES, MA'AM.  WELL, ON MARCH 16TH --

10   Q.   SPEAK UP CLEARLY SO THE JURY CAN HEAR YOU.

11   A.   WELL, MARCH 16TH, MY WIFE, PHYLLIS MCLEAN, WE HAD A

12   BREAK-IN IN OUR HOUSE, SO SHE WANTED -- SHE WAS GOING TO GET

13   SOME KIND OF PROTECTION.  SHE KNEW A FRIEND NAMED PEACHES.

14   AND SO, WE MET HER AND TUVAL DOWN AT DAWN (PHONETIC) ROAD AT

15   THIS STORE AND GOT THE GUN, GOT OUT OF THE CAR.

16   Q.   AND WHO DID YOU BUY THE GUN FROM?

17   A.   TUVAL.

18   Q.   HOW MUCH DID YOU PAY FOR THE GUN?

19   A.   ABOUT 35 -- $35.

20        MS. HAMILTON:  I HAVE NOTHING FURTHER OF THIS

21   WITNESS, YOUR HONOR.

22        MR. DAVIS:  YOUR HONOR, MAY WE APPROACH THE BENCH?

23        THE COURT:  YES, SIR.

24        (BENCH CONFERENCE ON THE RECORD.)

25        MR. DAVIS:  YOUR HONOR, I WANT TO GIVE HIM A COPY OF

4-W

ATTACHMENT --- PLEA HEARING ON PRIORS

CA 871-83

Plea

SUPREME COURT : QUEENS COUNTY

CRIMINAL TERM : PART C-4

------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK :    Indictment  771-82
                                                     1640-83
        -against-                    :

ALLEN MOSLEY,                        :

              Defendant.             :
------------------------------------X
THE PEOPLE OF THE STATE OF NEWYORK

                                     : Indictment  773-82
        -against-                                  2334-83

                                     :
DAVID RICHBERG,
                                     :
              Defendant.
------------------------------------X

                    Criminal Courts Building
                    125-01 Queens Boulevard
                    Kew Gardens,  New York
                    September 28, 1983

     B e f o r e :

              THE HON. LEROY B. KELLAM
                                        Justice

Appearances:
     For the People:
        HON. JOHN J. SANTUCCI
        District Attorney, Queens County
           BY: STEPHEN FOYER
               Assistant District Attorney

     For the defendant Mosley:
        ALFRED PILIERO, ESQ.

     For the defendant Richberg:
        FRANK LAND, ESQ.

APPEALS BUREAU
RECEIVED
MAY 10 1984
SUPREME COURT
QUEENS COUNTY

                    Leon Siegel
                Official Court Reporter.

Colloquy                                    2

THE CLERK:   Indictments 771 of 1982 and 1640

of 1983.  Allen Mosley.  Alfred Piliero.  Indictments

773 of 1982 and 2334 of 1983.  David Richberg.  Frank

Land, counsel.

MR. PILIERO: May we approach, your Honor?

THE COURT:  Yes.

(An off the record conference was had at the

Bench between the Court, defense counsel and the

Assistant District Attorney.)

THE COURT:  Second call.

*****

THE CLERK: Indictments 771 of 1982 and 1640

of 1983.  Allen Mosley.  Alfred Piliero, counsel.

Indictments 773 of 1982 and 2334 of 1983.  David

Richberg.  Frank Land, counsel.

Are you Allen Mosley?

DEFENDANT MOSLEY: Yes.

THE CLERK: Mr. Piliero is your attorney?

DEFENDANT MOSLEY: Yes

THE CLERK:  Are you David Richberg?

DEFENDANT RICHBERG: Yes.

THE COURT:  Mr. Land is your attorney?

DEFENDANT RICHBERG: Yes.

THE CLERK:  Do you have an application?

Colloquy                                      3

MR. LAND: At this time Mr. Richberg, after consultation with me and I may add deep consultation has authorized me to withdraw his previously entered plea of not guilty and enter a plea of guilty to 110 140.25 of the Penal Law which is a Class D Felony. He also authorized--

THE CLERK: May I interject? On what indictment?

MR. LAND: This is Indictment 773 of 1982.

THE COURT: That's attempt burglary two.

MR. LAND: Also pleading guilty to the indictment of bail jumping first degree which is on Indictment 2334 of 1983.

THE CLERK: Your Honor, is defense counsel withdrawing his outstanding motion?

MR. LAND: So done.

THE COURT: Motion withdrawn in 2334; also motion in the other case.

MR. LAND: There was motion on relative to suppression on 773 of 1982.

THE COURT: And you withdraw that motion?

MR. LAND: Withdraw that motion.

MR. PILIERO: Under Indictment 771 of 1982 the defendant had authorized me to withdraw his prior plea

Colloquy                                          4

of not guilty and enter a plea of guilty to attempt

burglary second degree,  Class D felony, in full

satisfaction of the indictment, and under 1640 of

1983 defendant has authorized me to withdraw his

prior plea of not guilty on that case and enter a

plea of guilty to attempted burglary second degree,

Class D felony, to cover all the charges in that

indictment.

          THE COURT:  Attempt burglary two, Class D.

          First I'll take Mr. Allen Mosley and Mr.

Richberg on Indictments Number 771 and 773 of 1982,

respectively.

          Mr. Allen Mosley?

          DEFENDANT MOSLEY:  Yes.

          THE COURT:  Did you hear what your lawer,

Mr. Piliero, said - that you wish to plead guilty to

attempted burglary in the second degree?

          DEFENDANT MOSLEY:  Yes.

          THE COURT:  Is that what you wish to do?

          DEFENDANT MOSLEY:  Yes.

          THE COURT: Now, Mr. Richberg, did you hear

Mr. Land, your attorney, say that you wish to also

plead guilty to attempted burglary second degree?

          DEFENDANT RICHBERG:  Yes.

Colloquy                                          5

THE COURT:  A D felony.

DEFENDANT RICHBERG:  Yes.

THE COURT:  And is that what you wish to do?

DEFENDANT RICHBERG:  Yes.

THE COURT:  Have each of you gentlemen dis-
cussed this matter in detail with your respective
lawyers, the two lawyers here?

DEFENDANT MOSLEY:  Yes.

DEFENDANT RICHBERG:  Yes.

THE COURT:  Do you each realize that you have
a right, a constitutional right and statutory right,
to a trial by a judge and a trial, or a trial by a
jury, and if you plead guilty you waive that, give
up your right to any trial whatsoever?  Do you
understand that?

DEFENDANT MOSLEY:  Yes.

DEFENDANT RICHBERG: Yes.

THE COURT:  And as you know the motions have
been made with reference to the legality of the
action allegedly taken by the People and those
motions you had a right to be heard on and get a
decision on and your lawyers are withdrawing those
motions?  Do you understand that?

DEFENDANT MOSLEY:  Yes.

DEFENDANT RICHBERG:  Yes.

THE COURT: Do you realize that the People
have the burden of proving your guilt beyond a
reasonable doubt?  Otherwise you should be found not
guilty.  Do you understand that?

DEFENDANT MOSLEY: Yes.

DEFENDANT RICHBERG: Yes.

THE COURT: Has anybody threatened either of
you in any way to cause you to plead guilty?
Either of your lawyers?  Anyone in the District
Attorney's Office or anyone else threaten you in any
way to cause you to plead guilty?

DEFENDANT MOSLEY: No.

DEFENDANT RICHBERG: No.

THE COURT:  Is it fair to say that as far as
guilt is concerned you are pleading guilty because
each of you are in fact guilty and for no other
reason?

DEFENDANT MOSLEY: Yes.

DEFENDANT RICHBERG:  Yes.

THE COURT:  Each of you are offering to plead
guilty to the charge of attempted burglary second
degree because while you were acting in concert,
that is, acting together, on or about March 3, 1982
you knowingly attempted to enter and remain unlaw-

fully in the dwelling of Alma Johnson with intent

to commit a crime in the dwelling?  Mr. Mosley?

    DEFENDANT MOSLEY:  Yes.

    THE COURT:  Is that what you did?

    DEFENDANT MOSLEY:  Yes.

    THE COURT:  And Mr. Richberg?

    DEFENDANT RICHBERG:  Yes.

    THE COURT:  Where was that dwelling located?

    DEFENDANT RICHBERG:  On Yates Avenue.

    THE COURT:  Where is that?

    DEFENDANT RICHBERG:  Queens.

    THE COURT:  What was the crime that was intende

to be committed in that building?

    DEFENDANT MOSLEY:  Attempt burglary.

    THE COURT:  What?  Tell me in words, not using

legal terms.  What did you intend to do and do in

the dwelling?  What were you intending to go in there

for?

    DEFENDANT MOSLEY:  A bike.

    THE COURT:  A bicycle you thought was in the

building?

    DEFENDANT MOSLEY:  Yes.

    THE COURT:  Did it belong to you?

    DEFENDANT MOSLEY:  No.

Colloquy                                      8

THE COURT: You knew you had no authority to
go in there to get the bike or anything else?  Is
that right?

DEFENDANT MOSLEY:  Yes.

THE COURT:  What were you going in there for?

DEFENDANT RICHBERG:  The same thing.

THE COURT:  And you knew you had no authority?

DEFENDANT RICHBERG:  Right.

MR. FOYER:  I'd like to inquire of each.  What
did you want to do with the bike?

DEFENDANT MOSLEY:  Keep it.

MR. FOYER: Did you want to remove the bike
from the premises?

DEFENDANT MOSLEY:  Yes.

DEFENDANT RICHBERG:  Yes.

MR. FOYER:  What type of building was this?

DEFENDANT MOSLEY: House.

DEFENDANT RICHBERG: House.

MR. FOYER: Private house?

DEFENDANT MOSLEY:  Think so.

DEFENDANT RICHBERG:  Apartment house.

MR. FOYER:  Thank you, your Honor.

THE COURT:  Now, were any promises made to
either of you gentlemen other than I have had a

conference with your lawyers and the District
Attorney and I know that there's been plea negotia-
tions with each of your lawyers and the District
Attorney's Office and I have agreed to promise,
based on your conferences and what they have discussed
with each other and with the Court, to sentence each
of you to one to three years in the New York State
Department of Corrections on this plea. In addition
to that, it is my understanding that there's one
other for each of you, one other plea that each of
you intends to take, and I intend to sentence you
to one to three years on each of those, that is,
each of you,  However, both, or all of these will
run concurrent with each other. In other words, each
of you will have two felony convictions and sentence
will be one to three concurrent.

Have any other promises been made to you?  Do
you understand?  Mr. Richberg, you just pleaded
guilty to attempted burglary second degree. You also
intend to plead guilty to bail jumping first degree
which is an E felony and that the sentence of the
Court would be one to three in the first count
and one to three in the second indictment, but they
both will run together, concurrent with each other.
Do you understand?

Colloquy                                              10

DEFENDANT RICHBERG:  Yes.

THE COURT:  So the sentence will be two sepa-
rate sentences and served at the same time.  Do you
understand that?

DEFENDANT RICHBERG: Yes.

THE COURT:  That's the promise I made.

MR. LAND: I want to make a representation to
this Court that we went through this in great detail
inside.

THE COURT: Now, Mr. Mosley, you have a burglary
and you are going to plead guilty to another burglary.
That's my understanding.  Do you understand that?

DEFENDANT MOSLEY: I understand that.

THE COURT: I had promised your lawyer that I
would sentence you one to three years on the first one;
that also I would sentence you to one to three years
on the second one, and they will run concurrent, that
is, each of those you will serve at the same time.  Do
you understand that?

DEFENDANT MOSLEU:  I understand that, but the
time I have been in here, would that count?

THE COURT: You get credit for time served.

MR. PILIERO:  That was his concern.  He has
been in close to eight months.  I have indicated to

Colloquy                                11

him any time he's done on these cases he will get

credit.

THE COURT: He will get credit for time served

on the two separate cases, yes. That's my understand-

ing, but that's with him. My sentence is one to

three and I am sure Corrections will work out the

correct time.

All right. Knwing that, do you still want to

plead guilty?

DEFENDANT MOSLEY:  Yes.

THE COURT: How about you?

DEFENDANT RICHBERG: Yes.

THE COURT: Now, one other thing I must tell

you. Now, each of you are pleading guilty to a

felony conviction, which means that in the event

that you are convicted hereafter of another felony

that you will be facing more time, jail time,

because you have these convictions. Do you under-

stand that? More than you would have if you didn't

have these convictions. You will be facing extra

time because of these convictions. Do you understand

that?

DEFENDANT RICHBERG: I understand.

DEFENDANT MOSLEY:  Yes, but I have another

Colloquy                                    12

case pending now.  Wil that be the same thing?

THE COURT:  Any conviction that you have

for a felony after this conviction will cause you

to serve more time for that convictions.

MR. PILIERO:  Here is the situation.  Defend-

ant has a matter pending downstairs involving an

ex-girl friend.  The People have not been ready.

It will be dismissed.  I am telling him that has no

status as predicate felony on any case.

THE COURT:  That's not the question he asked

me.  He asked me would another felony if it's

pending now - would that effect that, and it is my

answer that any felony that he is convicted of

after this will be--

MR. LAND:  It occurred before.  I want to add

one other factor which was not discussed prior but

I think I should.  They both have a right to ask for

youthful offender treatment. It wasn't discussed

one way or another but I will on the sentence.

THE COURT:  Don't confuse us with YO now.

If this happened before, it was already there.  It

would not serve as predicate felony.

MR. PILIERO:  Your Honor, it's my understand-

ing.

Colloquy                                    13

MR. FOYER: Your Honor, this is a negotiated plea and the People are not offering YO at this time.

MR. LAND: I understand.

THE COURT: I am not promising YO. Don't confuse it with YO. I am not promising YO. Do you understand that?

DEFENDANT MOSLEY: I understand. May I say something?

THE COURT: Yes, you have a right.

DEFENDANT MOSLEY: My mother was here and I think if she'd find out I am pleading guilty she'd feel upset and I want to speak to you.

MR. LAND: He wants jail visit with girl friend.

MR. PILIERO: If it's possible. I explained to him it's very difficult with security problems.

THE COURT: Let's keep this with the plea. Does this affect the plea?

DEFENDANT MOSLEY: I wanted my mother to be here but she left and she finds out I am pleading guilty - she's one who stayed and I wanted five minutes to explain something of that nature.

THE COURT: Sir, I can not, because of security

Colloquy                                    14

reasons, authorize any visit.  No.  You can certainly

visit at the House of Detention.

DEFENDANT MOSLEY:  That's why I'm trying to

get this done earlier.

THE COURT:  Sir, the answer is no.  Now, do

you wish to plead guilty or not?

DEFENDANT MOSLEY: Yes.

THE COURT:  Plea is acceptable.  Do you have

any questions?

MR. FOYER: No, your Honor.

THE CLERK:  Do you wish me to take this pedi-

gree on these now or wait and take it all later

after the other two?

THE COURT: I am going to take the other two

right now.

MR. LAND:  I'm ready on the bail jumping.

THE COURT: Mr. Richberg, you have indicated

you wish to plead guilty to bail jumping first

degree?

DEFENDANT RICHBERG:  Right.

THE COURT:  That's Indictment 2334 of 1983, and

is that what you still wish to do?

DEFENDANT RICHBERG:  Yes.

THE COURT:  Are you pleading guilty because

on or about March 16, 1983 in the County of Queens

after having been released by court order from

custody and allowed to remain at liberty on condition

that you'd subsequently appear personally in connec-

tion with a charge against you of committing the

felony of attempted robbery in the first degree

that you failed to appear personally on the required

date of March 23, 1983, in Part 3A in the Queens

Criminal Court, and voluntarily within thirty days

thereafter you still failed to appear?

        DEFENDANT RICHBERG:  Right.

        THE COURT: Is that what you want to plead guilty

to?

        DEFENDANT RICHBERG:  Yes.

        THE COURT:  And are you pleading guilty because

you are guilty and for no other reason?

        DEFENDANT RICHBERG:  Yes.

        THE COURT: You have discussed that matter with

your lawyer?

        DEFENDANT RICHBERG:  Yes.

        THE COURT: And you know that you have given

up all the rights under this insofar as trial as you

did the other indictment?

        DEFENDANT RICHBERG: Yes.

THE COURT:  And promises are the same I just told you about?  Understand that?

DEFENDANT RICHBERG:  Yes.

MR. FOYER: One question.  You were returned on April 25?

MR. LAND: Arrested April 25, 1983.

DEFENDANT RICHBERG:  Yes.

MR. FOYER: Was it more than thirty days had expired?

DEFENDANT RICHBERG:  Yes.

MR. FOYER:  Thank you.

MR. LAND:  Also for the record, that case was dismissed, the original charge.  The basic original charge.  It's nothing to do with it - just interesting that it happened that way.

THE COURT:  Do you wish to plead guilty to that charge?

DEFENDANT RICHBERG:  Yes.

THE COURT: Now, Mr. Mosley, are you wishing to plead guilty to attempt burglary in the second degree in that while you were acting on concert with another person on or about April 21, 1983 you knowingly attempted to enter and remain unlawfully in the dwelling of Raphael Callwood with intent to commit a

Colloquy                                    **17**

crime therein?  Is that true?

        DEFENDANT MOSLEY:  Yes.

        THE COURT:  Where'd that happen?

        DEFENDANT MOSLEY:  Luckar Street.

        THE COURT:  Queens County?

        DEFENDANT MOSLEY:  Yes.

        THE COURT:  What did you  intend to do in that
dwelling?

        DEFENDANT MOSLEY: Me and somebody else trying
to remove a bike.

        THE COURT: From inside the dwelling?

        DEFENDANT MOSLEY:  Yes.

        THE COURT:  Did you have any authority to go
in the dwelling or remove bike?

        DEFENDANT MOSLEY: No.

        THE COURT:  Were you goint to steal bike from
someone?

        DEFENDANT MOSLEY:  I was going to take the
bike.

        THE COURT:  You didn't have authority to take
it?

        DEFENDANT MOSLEY: No.

        THE COURT:  Wouldn't that be stealing?

        DEFENDANT MOSLEY:  It would be stealing, yes.

Colloquy                                                    18

THE COURT: You knew that that was an unlawful act?

DEFENDANT MOSLEY:  Yes.

MR. FOYER:  What type of premises was this? Apartment building?  House?

DEFENDANT MOSLEY: House.

MR. FOYER: Single family?

DEFENDANT MOSLEY:  Don't know if single family.

THE COURT:  The plea is acceptable to the Court.

THE CLERK:  Each defendant, you are advised under existing law prior felony conviction may serve to increase the punishment for the felonies of which you now stand convicted.  Both of you are further advised under Indictment 2334 of 1983 as regards David Richberg, and 1640 of 1983 as to Allen Mosley, pursuant to penal Law Section 60135 there is a maddatory penalty surcharge in the amount of $75 or in lieu thereof an additional period of incarceration of one year.  Your attorneys will explain both these respective statements to you.

(Each defendant was duly sworn by the Clerk and the pedigree of each was recorded.)

MR. FOYER: Under Indictment 1640 of 1983

4-y

ATTACHMENT --- PSI page # 7

The FBI report showed the defendant was convicted upon a plea of guilty. Records show he was originally arrested and charged with Burglary/Illegal Entry of a Dwelling, Grand Larceny, Possession of Stolen Property, and Criminal Misconduct with Intent to Damage. He pled guilty to Criminal Trespass/3rd degree misdemeanor and was sentenced to time served. A bench warrant had been issued for the defendant on March 31, 1982 and was executed on April 23, 1982. A period of seven (7) days passed before the sentence was imposed.

| 11. | 03/03/82 (Age 17) | Attempted Burglary, 2nd degree, Superior Court, Queens, NY, Indictment #771-82. | 10/24/83: 1 to 3 years. | 4A1.1(a) 3 |

The FBI report showed the defendant was originally arrested and charged with Burglary/Illegal Entry of a Dwelling, Attempt Burglary/3rd degree, Criminal Possession of Stolen Property Valued, Criminal Trespass/3rd degree, and Attempt Criminal Trespass/3rd degree. A bench warrant issued on July 25, 1983 was vacated. He was convicted of a class D felony as stated above and committed to Elmira Correctional Facility on November 1, 1983 and paroled on November 26, 1984. He was discharged from parole supervision effective November 26, 1985.

| 12. | 04/21/83 (Age 18) | Attempted Burglary, 2nd degree, Superior Court, Queens, NY, Indictment #1640-83. | 10/24/83: 1 to 3 years. | 4A1.1 (a) 3 |

The FBI report revealed the defendant was originally arrested and charged with Burglary/Illegal Entry of a Dwelling and Possession of Stolen Property. He pled guilty to the above Class D felony and once he was returned on a warrant effective July 26, 1983, he was sentenced in October 1983 to 1 to 3 years. He was paroled on this sentence effective November 26, 1984 and was discharged from parole supervision on November 26, 1985.

| 13. | 09/23/86 (Age 21) | Unlawful Possession of Marijuana, Criminal Court, Queens, NY, #6Q028285. | 09/23/86: $75 fine. | 4A1.1(c) 1 |

The FBI record check revealed on September 23, 1986, the defendant was arrested and charged with Robbery/2nd degree and Unlawful Possession of Marijuana. He entered a plea of guilty to the latter and was found guilty of the drug related offense. Records further indicate that the fine was paid.

**ATTACHMENT --- CLERKS RECORD**

United States District Court
EASTERN District of NORTH Carolina

To The Clerk of Courts.

Criminal No. 93-102-07
Civil No 5: 97-cv-30

My NAME is Alan Morsley #1471805,
Im currently BeingHeld At Lewisburg Federal Prison
I Wish To MAKE A Record of The Fact THAT The prison
is, and Has Been ON EMERGENCY LOCK Down Since
Aug 28, 1997,

I ASK THAT THis Be TAKEN into Account
For My Delay in RESPONSE  As Well As
The Quality OF My Motion's

Sincerly

Alan Morsley
Alan Morsley

Notarial Seal
Jeffrey E. Fromm, Notary Public
Lewisburg Boro, Union County
My Commission Expires Jan. 29, 2001